### THE CHARLES D. LANE.

(District Court, D. Washington, N. D. February 16, 1901.)

1. SEAMEN—WAGES RECOVERABLE—RIGHT TO DISCHARGE ON VESSEL BECOMING DISABLED.

   A vessel which is so injured by encountering ordinary perils of navigation as to be unfit to complete the particular voyage commenced, is "lost or wrecked," within the meaning of Rev. St. U. S. § 4527, and the seamen employed for such voyage may rightfully be discharged on her return to the port of departure, and are entitled to recover wages only for the time actually served.

2. SAME—VOLUNTARY SIGNING OF RELEASE.

   A vessel, soon after starting on a voyage, became so disabled in a storm as to be unable to proceed, and jettisoned a portion of her cargo, and returned to the port of departure for repairs, where the master discharged the crew, and paid them their wages for the time served. The men protested that they were entitled to a month's pay, but without compulsion accepted the money tendered, and signed a full release in the presence of the shipping commissioner. Held, that they were bound by such release, and could not maintain a suit against the vessel for additional wages.

Libel by the crew of the steamship Charles D. Lane, who were discharged upon the return of the vessel to port in a disabled condition, after encountering a storm. The libelants were paid for the time of actual service, and at the time of receiving payment signed an agreement before a shipping commissioner, releasing the vessel, her master and owners, from all liability on account of their contract. On final hearing. Decree of dismissal.

Palmer & Brown, for libelants.

Richard Saxe Jones, for claimant.

HANFORD, District Judge. The facts in this case, according to a statement thereof, agreed to by respective parties, are as follows: The libelants signed shipping articles for a voyage from Port Townsend to Guayaquil, Ecuador, and other ports and places, back to a final port of discharge in the United States; the term of employment not to exceed 12 calendar months, and started on said voyage;

but, after the steamer passed Cape Flattery, the wind and seas became extremely violent, doing such damage to the vessel that she was obliged to jettison part of her cargo, and return to port for repairs. The damages to the vessel were so extensive that she was partly filled with water, which ruined a large part of her cargo, and extinguished the fires in the engine room; so that, being unable to make port by her own power, she required the assistance of a tug to bring her in. At the time of commencing this suit the extent of the damages to the cargo had not been ascertained, and the losses chargeable to the insurers had not been adjusted, nor had it been determined whether the vessel would proceed on the same voyage after completing her repairs, or seek other employment. After being towed into port, the captain declared the voyage terminated, and discharged his crew. The libelants all went before a United States shipping commissioner, and received from him wages at their contract rate for seven days, that being the time intervening from the commencement of the voyage until their discharge. At the time of receiving their money each of the libelants protested that he was entitled to and should be paid one full month's wages, as provided in cases of wrongful discharge by section 4527, Rev. St. U. S. Nevertheless, each of them, with full knowledge of the nature and purpose of the transaction, received the money tendered, and signed the release, and there is no pretense that any fraud or deceit was practiced, or that the men were acting under duress. Under the circumstances shown it cannot be said that the act of the master in discharging his crew was a wrongful act. It was necessary for him to declare the voyage terminated. The necessity arose from encountering perils of navigation which all mariners understand may happen to any ship on any voyage. Every contract of shipment made by seamen is made in view of such a contingency; and when the contingency happens, and the voyage is broken up, without fault on the part of the captain or the ship, but wholly by force of the natural elements, it must be assumed that the contract is terminated in a manner contemplated and impliedly consented to by the parties, and the case does not come within the provisions of section 4527, Rev. St. U. S. The libelants received the full amount to which they were entitled by the provisions of section 4526, Rev. St. U. S. A ship, to be lost or wrecked within the meaning of the words of that section, does not have to be completely destroyed. I hold that if a vessel is lost to her owners without fault on their part, or if she is so injured by encountering ordinary perils of navigation as to be unfit to complete the particular voyage commenced, the terms of the statute are met, and the seamen receive all they can legally claim when they are paid wages at the contract rate for the time of actual service. Flanagan v. Steamship Co. (D. C.) 30 Fed. 202.

There seems to be a popular idea that a seaman cannot be bound by any contract, in writing or otherwise, with reference to his personal services as a mariner or in settlement for wages. While the courts regard seamen as wards of the admiralty, and protect them from unfair treatment, notwithstanding their own improvidence in signing away their rights, still seamen are recognized as men, and

agreements which they make deliberately, intelligently, and voluntarily are to be enforced in their favor, and they are to be bound thereby, the same as other competent parties to lawful contracts. Evidence of a verbal protest or assertion of a claim inconsistent with the terms of their written agreement made before or contemporaneously with the act of signing it cannot be admitted. To annul the release because the men protested would, in effect, make oral evidence of mere dissatisfaction superior to a written contract. These men were on land, and under the protection of their government. They were put to their election to accept the money tendered and sign the release, or proceed in the usual way to secure an adjudication of their demands, and, having made their election to accept the tender and sign the release, they cannot now in good faith litigate for additional wages. The Pennsylvania (D. C.) 98 Fed. 744.

Upon both of the grounds upon which the case is defended I hold that the libelants have no meritorious cause of action, and therefore direct that a decree be entered dismissing the case, with costs.