Charlie L. HENDERSON
v.
The ARUNDEL CORPORATION,
a body corporate.

Charlie L. HENDERSON
v.
Elder DEMPSTER.

Peter BERSHESKY et al.
v.
The ARUNDEL CORPORATION,
a body corporate.

Peter BERSHESKY et al.
v.
Elder DEMPSTER.

Nos. 4777, 4944, 4943, 4945.

United States District Court
D. Maryland.

Dec. 22, 1966.

Joseph F. Lentz, Jr., and Raymond J. Cardillo, Monfred & Lentz, Baltimore, Md., for libellants.

Henry M. Decker, Jr., and Walter S. Levin, Baltimore, Md., for respondent, The Arundel Corp.

Southgate L. Morison, Ober, Williams & Grimes, Baltimore, Md., for respondent, Elder Dempster.

WATKINS, District Judge.

In the above entitled four companion cases thirty-five libellants, members of the crew of the Dredge Lyon owned, operated and controlled by respondent The Arundel Corporation (Arundel), by libels in personam seek to recover from Arundel and from Elder Dempster, a foreign corporation which owned, operated or controlled the M/S PRAHSU, damages for loss of approximately six weeks' wages, maintenance (subsistence) and overtime from February 1, 1963 in the aggregate sum of $70,000.00, each libellant claiming damages individually in the sum of $2,000.00. This is libellant Henderson's third attempt to state a cause of action against the said respondents. His first and original libel was dismissed as to Elder Dempster—with leave to file an amended libel—for the reasons set forth by this Court in Henderson v. Arundel Corporation, D.C.D.Md.1965, 241 F.Supp. 812. His first amended libel was dismissed as to both respondents—with leave to file a second amended libel—for the reasons stated in an oral opinion of this Court rendered on December 3, 1965, in Admiralty No. 4777. Libellant Henderson then filed a second amended libel in Admiralty No. 4777 against his employer Arundel only, dropping Elder Dempster as a respondent in that proceeding. Simultaneously he filed a separate libel against Elder Dempster (Admiralty No. 4944). On the same day libellant Henderson's fellow crew members instituted two actions, one against Arundel (Admiralty No. 4943) and one against Elder Dempster (Admiralty No. 4945), each of which cases for the purposes of the instant proceedings set out their respective causes of action in allegations identical to those made in the Henderson libels. Arundel has filed exceptions to the two libels pending against it, as has Elder Dempster. Accordingly, a consideration of, and disposition of, the Henderson libels will be controlling as to, and dispositive of, the libels of Henderson's fellow crew members.

Henderson asserts two grounds for recovery against Arundel. His cause of action set out in count one is based upon the allegations that on January 28, 1963 while Henderson was engaged in employment for Arundel as a mate on board the Dredge Lyon, through the negligence of Arundel the M/S PRAHSU and the dredge collided, causing severe damage to the dredge, necessitating the dredge to be idle and her crew, including libellant Henderson, to be laid off until such time as necessary repairs could be made; that at the time of the collision libellant Henderson was employed by Arundel pursuant to, and for the duration of, a contract which Arundel had with the United States Corps of Engineers for the dredging of the channel of the Baltimore Harbor; and that "solely as a result of the collision aforesaid and [his] subsequent wrongful lay off and/or discharge" the libellant was caused to lose wages, subsistence and overtime to the estimated amount of $2,000.00.

Arundel has filed exceptions to this count of the libel on the grounds that it fails to state a claim upon which relief can be given; that it does not set forth a legal or equitable cause of action for wages, maintenance and overtime which would have normally accrued to libellant; that it discloses no proximate causal connection between the alleged acts of negligence of Arundel and the losses and damages claimed by its employee; that it fails to allege any duty owed by Arundel to its employee with respect to the items of damage claimed, which duty was breached by Arundel's alleged negligence; and that the averment that the libellant was wrongfully laid off and/or discharged is made without any factual allegations in support thereof so as to inform Arundel of the issues raised and so

as to enable Arundel to answer the averment. In its brief, Arundel takes the position that there was no duty owed by Arundel to Henderson or to any of its employees on the Dredge Lyon to use any degree of care with respect to the preservation of their employment, and, if through negligence on Arundel's part (whether resulting in a collision or a negligent failure to keep the dredge in a seaworthy condition) the dredge had to be laid up for repairs and the employment of the crew suspended or terminated during such period of repair, no claim for lost future, prospective wages could be successfully asserted absent a breach of some condition of the employee's contract of employment. Basically, Arundel contends that any suit brought against it to recover loss of wages must be a cause of action sounding in contract; that it has no, and cannot have any, tort liability to libellant since he claims to have suffered neither personal injuries nor property damage as a result of the collision in question, and that, as Count I of the libel alleges negligent conduct on the part of Arundel causing the collision, libellant's cause of action sounds in tort and he has accordingly failed to state a cause of action against Arundel.

Libellant has clearly alleged that he was employed by Arundel on board the Dredge Lyon for a definite period of time, that is "for the duration of a contract which the Arundel Corporation did receive from the United States Corps of Engineers for the dredging of the channel of the Baltimore Harbor". He has further clearly alleged that the performance by Arundel of this contractual undertaking was rendered impossible when the dredge was laid up for repairs and that the impossibility of performance was directly attributable to negligent conduct on the part of Arundel which caused the collision forcing the dredge to be laid up for repairs. Thus, libellant has clearly alleged a breach of his contract of employment by Arundel as it is only fortuitous impossibility of performance that excuses a promisor from liability, liability being imposed in those cases where

impossibility of performance is due to the fault of the promisor (Williston on Contracts, Revised Edition, Volume 6, sections 1935 and 1959).

In addition to alleging a right to recovery under the general and well established principles applicable in the field of contract law, libellant has in Count I of his libel made allegations which are sufficient to bring him within the ambit of a line of cases apparently recognizing the right of a seaman to recover wages to the end of a voyage even though the service of the seaman terminates prior to the period contemplated in the employment contract, where the premature termination is occasioned by the loss or wreck of the vessel and the loss or wreck of the vessel in turn was caused by the negligence of the master. Historically, "the wages of seamen were dependent upon the freight earnings, and from this fact came the phrase 'freight is the mother of wages, and the safety of the ship the mother of freight' " (Norris on the Law of Seamen, 2nd Edition, Volume 1, section 303, page 340). The Maritime Law has recognized in the case of shipwreck an exception to the general rule that no wages are due where no freight is earned. The courts in the past have belabored the point as to whether the compensation allowed in the cases of shipwreck is to be deemed wages earned under the contract of employment or whether the compensation is to be regarded as a salvage compensation, the weight of authority favoring the former view. (Drew v. Pope, D. C.D.Cal.1871, Fed.Cas.No. 4,080). Which view was taken was not, even in the past, of practical significance, and since the enactment of the statute regarding termination of "wages" by loss of the vessel (Title 46 U.S.C. section 593) the view to be taken is governed either expressly by that statute or, in the case of certain voyages expressly excluded from the operation of that statute, by analogy to its provisions. Section 593 of Title 46 provides that in "cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the loss or wreck

of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but *not for any further period"*. [Emphasis supplied]. Thus the exception to the general rule that no wages are due where no freight is earned originally carved out by the courts was approved and enacted into law by Congress.

It would appear probable that section 593 of Title 46, the so-called "Wreck Statute" is not expressly applicable to the libellant in the present case for although the record is silent as to the actual activities of the Dredge Lyon it would appear highly probable that it was engaged in dredging activities similar to those considered by the United States Court of Appeals for the Fourth Circuit in Gardner v. Danzler, 4 Cir. 1960, 281 F.2d 719. In that case the Fourth Circuit held that the regulatory approach adopted by Congress for the supervised shipping of a crew for foreign voyages is not adaptable "to small craft on inland waters making short and repeated trips or to dredges which may work in one area for months or years" (281 F.2d at page 725) and specifically concluded that section 544 of Title 46 exempting vessels in coastwise trade removed a dredge from statutory regulation. Section 544 provides in pertinent part that sections 591–596, which sections include the "Wreck Statute", section 593, shall not apply to sail or steam vessels engaged in the coastwise trade. A dredge has been held by the Fourth Circuit in the Danzler case to be such a vessel. However, even if section 593 is not expressly applicable to seamen such as the crew of the Dredge Lyon, by analogy that section furnishes a standard by which to determine what rights to compensation a crew member of the Dredge Lyon has under the facts alleged in the instant case. The practice of referring to statutes enlarging or insuring and protecting the rights of merchant seamen in order to adjudge by analogy the claims of seamen expressly excluded from the mandatory coverage of such statutes was recognized by the United States Court of Appeals for the Fourth Circuit in Old Point Fish Company v. Haywood, 4 Cir. 1940, 109 F.2d 703, 704. Thus for the purposes of the present proceedings it does not become necessary to inquire into the actual activities of the Dredge Lyon and to determine whether or not her crew is expressly excluded from the mandatory provisions of the "Wreck Statute" for even if the libellants are so excluded, a reference to and consideration of that statute is appropriate to aid the Court in determining by analogy what claims or causes of action the libellants may assert under the general maritime law.

■ In order to come within the confines of the Wreck Statute it is not necessary that the vessel "be completely destroyed, but that, if she is so injured by encountering ordinary perils of navigation as to be unfit to complete the particular voyage commenced, the terms of the statute are met, and the seamen receive all they can legally claim when they are paid wages at the contract rate for the time of actual service" with the ship. (Opinion by Judge Morris A. Soper, then a district judge in The Quaker City, D.C. D.Md.1923, 290 F. 409, 410; see also: Norris on the Law of Seamen, 2nd Edition, Volume 1, section 437, pages 457–458). The seaman is not entitled to wages for any further period. Specifically where the service of the seaman is terminated by reason of the loss or wreck of the vessel he is not entitled to wages for the period of employment contemplated in the contract of employment. It is only where it is alleged that the voyage has been terminated due to the fault of the master or the owner that the courts have recognized the possibility of a recovery by a seaman of a loss of future or anticipated wages. This proposition is stated, although in the negative, in Charles D. Lane, D.C.D.Wash.1901, 106 F. 746, 747, where the court said:

"* * * Under the circumstances shown it cannot be said that the act of the master in discharging his crew was a wrongful act. It was necessary for him to declare the voyage terminated. The necessity arose from encountering perils of navigation which all mariners

understand may happen to any ship on any voyage. Every contract of shipment made by seamen is made in view of such a contingency; and when the contingency happens, and the voyage is broken up, *without fault on the part of the captain or the ship*, but wholly by force of the natural elements, it must be assumed that the contract is terminated in a manner contemplated and impliedly consented to by the parties, and the case does not come within the provisions of section 4527, Rev.St. U.S. [Title 46, U.S.C., section 594]." (Emphasis supplied).

This language clearly implies that a cause of action exists against a vessel owner for loss of anticipated wages where the voyage is terminated due to the fault of the captain of the ship. While it is true in the Charles D. Lane that the crew was suing to recover not for the loss of prospective wages but rather to recover the statutory penalty authorized by section 594 of Title 46 as a recoverable item in cases of wrongful discharge, it is in just such a case that the Wreck Statute is most frequently invoked, the contention of the vessel owner being that the discharge was not wrongful as the voyage was terminated because of perils of the sea. In the early case of Davis v. Faucon, D.C.S.D.N.Y.1843, Fed.Cas.No. 3,632b, the Court clearly recognized a cause of action for recovery of wages where the loss of the vessel was occasioned by the negligence of the master, saying:

" * * * I am persuaded the sound conclusions of the law merchant, supported by the most urgent equity, is that seamen are *to recover wages upon the terms of their agreement, to a like extent as if the contract was with any other class of laborers,* notwithstanding the wreck of the vessel and loss of the voyage, unless such misfortune was

the result of inevitable accident in no way produced by the fault of owner or master." (7 Fed.Cas., page 125).

It is not clear from that opinion, however, whether the recovery of wages was limited to earned wages or was extended to wages to the end of the voyage. But the possibility of the recovery of loss of future or anticipated wages was recognized by Judge Learned Hand in Borup v. Western Operating Corporation, 2 Cir. 1942, 130 F.2d 381, 386, cert. den. 1942, 317 U.S. 672, 63 S.Ct. 77, 87 L.Ed. 540, where he stated:

 *  *  *  *  *  *

"There remains only the claim for damages due to the delay at Durban to make temporary repairs. We do not say whether, if the grounding had been negligent, the owner would have been liable for the loss; arguendo, we shall assume that it would, but it is impossible to find the least basis for saying that the accident was due to the ship's negligence. She had the latest chart; so far as appears nobody had ever had any intimation that there was a rock until she struck it. Nothing could be unfairer than to hold the owner for such an occurrence."

A situation closely analogous to a voyage terminated prematurely through a collision occasioned by negligence imputable to the owner of the vessel arises when a voyage is terminated prematurely through the libelling of the vessel where the libelling is necessitated by the failure of the owner to make the necessary provision for the voyage. In the latter instance the United States Court of Appeals for the Fourth Circuit, while recognizing the general rule that the libelling of a vessel abrogates the seaman's contract of employment and constitutes his discharge by operation of law,[1] stated an exception existed to the general rule "when,

---

1. For an interesting case recognizing the general rule that applies when a vessel is libelled, see Old Point Fish Co. v. Haywood, 4 Cir. 1940, 109 F.2d 703 in which it was held that where a fishing venture was begun under a "lay" plan requiring the sharing of proceeds of the catch between shipowner and crew, but

the ship became disabled a few days later and was towed back to the port where she was libelled for repairs and supplies, crewmen could not assert a prior lien as for wages in lieu of prospective and speculative shares of fish not caught because the voyage was prematurely terminated by the libel as the seizure of a

as in this case, the abandonment of the voyage and the discharge of the crew were occasioned by no fault on their part but by the failure of the owner to make the necessary provision for the voyage, It is true that the ship was taken into custody by reason of the libel filed by the crew, but the libel was filed after the men had been notified by the owner that the ship would not sail. It is obvious that the abandonment of the voyage was not due to the libel but to the owner's financial difficulties which compelled him to break his contract." (Vlavianos v. The Cypress, 4 Cir. 1948, 171 F.2d 435, 439, cert. den. 1949, 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732). Thus finding the termination of the contract of employment wrongful and not arising through operation of law, the Court awarded statutory damages to the crew for wrongful discharge. By analogy, an exception to the general rule announced by the Wreck Statute that the loss or wreck of a vessel terminates the voyage, terminates the right to future wages and does not entitle the seaman to statutory damages for wrongful discharge, would arise where the loss or wreck of the vessel is occasioned by the negligence of the owner. Thus the available authorities indicate that the negligence of a master or a vessel in causing the wreck or loss of the vessel charges the owner—employer with such negligence, takes the case out of the Wreck Statute, does not limit the seaman's recovery against his employer to earned wages, and affords grounds for a suit seeking recovery against the employer for loss of all of the wages for the period of service contemplated in the contract of employment.[2] Such a result would obtain under the heretofore re-ferred to principle of contract law that where negligent conduct on the part of the promisor renders his performance impossible and thereby causes a breach of contract, he is held liable to the promisee for damages resulting from said breach. Certainly it requires no citation of authority to support the statement that the Supreme Court of the United States and various of the United States Courts of Appeal have never, in construing Maritime Law, afforded a less favorable position to the seaman, the much favored ward of Admiralty, than the position afforded to the average, ordinary common law suitor. For all of the foregoing reasons, this court concludes that the libellant Henderson has stated a cause of action for relief under both general contract law and maritime law in Count I of his second amended libel against Arundel in Admiralty No. 4777 and that his fellow crew members have done the same in Count I of their libel against Arundel in Admiralty No. 4943. Accordingly, the exceptions of Arundel to these counts of the said libels are hereby overruled.

In Count No. II of Henderson's libel against Arundel, the allegations of the first count against Arundel are incorporated and made a part of the second count by reference. It is further alleged that "as a result of the said collision a right of action against the owners of the M/S PRAHSU was created on behalf of the libellant" for those wages, subsistence and overtime which libellant would have continued to earn had it not been for the collision; that notice of his claim for his loss of income against the owners of the M/S PRAHSU was given to Arundel; that Arundel could have sought and re-

---

vessel under process terminates the voyage, operates as a discharge of the crew and terminates the right to future wages.

2. Thomson v. United States, 4 Cir. 1959, 266 F.2d 852, in which the wages allowed a master of a vessel which negligently fouled the wreck of the San Marcos were limited to compensation for those services rendered by the master after the collision which were reasonably neces-sary for the protection of the vessel, the successful completion of salvage and repair operations and the subsequent efficiency of the vessel, is not to the contrary, for the negligence causing the collision in that case was that of the master himself and of the United States in improperly marking the wreckage. The master could scarcely be heard to seek recovery for losses occasioned by his own negligence.

covered from the owners of the M/S PRAHSU libellant's loss of income; and that by reason of the fact that Arundel failed, neglected or refused to protect the libellant's interest, the libellant has a cause of action against Arundel for the full amount of his losses and damages in the sum of $2,000.00.

Arundel has filed exceptions to this count of the libel on the ground that Count II of the second amended libel fails to state a claim against Arundel upon which relief can be granted; that said count does not allege that libellant ever made demand on or request of Arundel to make claim or file suit against the owners of the M/S PRAHSU; and that contrary to the allegations of said count no legal duty was owned by Arundel to protect and to perfect libellant's alleged claim against Elder Dempster as owner of the M/S PRAHSU for loss of anticipated wages whereby any cause of action could arise in libellant's favor against Arundel from the alleged breach of such a duty.

■ However, there exists a deficiency, not pointed out by Arundel, in the allegations of Count II of the second amended libel which renders the count fatally defective and subject to dismissal. There is no allegation in said count that the collision in question was caused by the negligence of Elder Dempster or by its vessel the M/S PRAHSU or by any of Elder Dempster's officers, representatives or employees. The sole cause of the collision as alleged in Count II by incorporation by reference to Count I is the negligence of Arundel. Clearly, this creates no cause of action against Elder Dempster and gives rise to no duty on the part of Arundel to sue Elder Dempster. Even under the libellant's own theory of his case, the sine qua non of libellant's cause of action against Arundel in count two is missing, that is, negligent conduct on the part of Elder Dempster causing the collision with resultant damage to libellant through the loss of anticipated wages. Accordingly, this court holds that the libellant Henderson has failed to state a cause of action upon which relief could be granted in Count II of his second

amended libel against Arundel in Admiralty 4777, and that his fellow crew members have likewise failed to state a cause of action upon which relief could be granted in Count II of their libel against Arundel in Admiralty No. 4943. Accordingly, these counts of the said libels are hereby dismissed. This dismissal is without leave to amend for as will be developed hereinafter in the discussion of the libels against Elder Dempster, libellants have no cause of action against Elder Dempster even assuming that the collision was the result of its negligence. A fortiori, they have no cause of action against Arundel for its alleged failure to assert on their behalf a nonexisting cause of action against Elder Dempster.

In his libel against Elder Dempster, Henderson alleges that Elder Dempster owned, operated, chartered and otherwise controlled the M/S PRAHSU; that at the time in question he was employed by Arundel as a seaman aboard the Dredge Lyon at the rate of wages equal to $1,000.00 a month, plus overtime and subsistence; that on January 28, 1963, while he was on board said dredge in the course of his said employment, due solely to the negligence, recklessness and carelessness of Elder Dempster, its agents, officers and employees, the M/S PRAHSU collided with the dredge, causing severe damage to the dredge, necessitating the dredge to be idle and her crew, including libellant Henderson, to be idle until such time as the necessary repairs could be made; and that solely as a result of the collision with the resulting lay off of the dredge and her crew the libellant lost wages, etc. which would have normally accrued to him had it not been for the negligence of the respondent Elder Dempster, in the estimated sum of $2,000.00.

Elder Dempster has filed exceptions to this libel on the grounds that it fails to state a cause of action against Elder Dempster in that the facts alleged show that there was no duty owed by the respondent to the libellant which was violated by the acts of negligence alleged in the libel with respect to the items of the damages claimed; that the libel does not

allege that the libellant sustained any physical injuries in the collision; and that it does not allege that the libellant had a contract of employment for a definite period of time, or for the duration or until the completion of a certain contract or project undertaken by his employer.

The Court will not belabor the failure to allege the existence of a contractual relationship, the interference with which resulted in damage to libellant, as this shortcoming could presumably be easily cured by amendment. The real issue between the parties is that Elder Dempster takes the position that negligently damaging a person's property, even if a vessel, does not make the tortfeaser liable to another, even if a seaman, "simply because the property owner had a contract with that other person" relying upon Robins Dry Dock & Repair Co. v. Flint, 1927, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290; Borcich v. Ancich, 9 Cir. 1951, 191 F.2d 392, cert. den. 1952, 342 U.S. 905, 72 S.Ct. 293, 96 L.Ed. 677, reh. den. 1952, 342 U.S. 934, 72 S.Ct. 374, 96 L.Ed. 695 (admittedly reversed in Carbone v. Ursich, 9 Cir. 1953, 209 F.2d 178, 182); Hayes v. Luckenbach S. S. Co., D.C.D.Mass.1950, 92 F.Supp. 684; Casado v. Schooner Pilgrim, Inc., D.C.D.Mass.1959, 171 F.Supp. 78; Petition of Clipper Fishing Corporation, Inc., D.C.D.Mass.1961, 194 F.Supp. 827; Baird v. The Chesapeake & Potomac Telephone Co., 1955, 208 Md. 245, 117 A.2d 873; and Thomson v. United States, 4 Cir. 1959, 266 F.2d 852. While recognizing Elder Dempster's position as being in accord with the general rule of the law of torts, libellant urges that he comes within a special rule applicable to fishermen who have "long been recognized as beneficiaries under a special rule which made the wrongdoer liable not only for the damage done to the fishing vessel, but liable for the losses of the fishermen as well." (Carbone v. Ursich, 9 Cir. 1953, 209 F.2d 178, 182). He further takes the position that although he is not a fisherman, he is a seaman and comes within the ambit of the special rule because that "long recognized rule is no doubt a man-ifestation of the familiar principle that seamen are the favorites of admiralty and their economic interests entitled to the fullest possible legal protection." (Carbone v. Ursich, 9 Cir. 1953, 209 F.2d 178, 182). The two leading cases in this field are the Carbone case supporting the libellant's position and Casado v. Schooner Pilgrim, Inc., D.C.D.Mass.1959, 171 F. Supp. 78, in which the court refused to apply a "special rule" to fishermen and held to the general rule that a tortious interference with an existing employment relationship gives rise to a cause of action only where the interference is not only tortious but intentional. These two cases ably and succinctly review the authorities for and against creating a special rule applicable only to fishermen. There is no need for and nothing to be gained by a lengthy discussion by this court of the authorities in this field. Suffice it to say the United States Court of Appeals for the Ninth Circuit when considering this problem initially in 1951 stated that the loss of prospective wages by the fishermen "arose only through their contract with the owners—and while intentionally to bring about a breach of contract may give rise to a cause of action. Angle v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55, no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. See National Savings Bank of District of Columbia v. Ward, 100 U.S. 195, 25 L.Ed. 621. The law does not spread its protection so far." (Borcich v. Ancich, 9 Cir. 1951, 191 F.2d 392, 397). In reversing itself in Carbone v. Ursich, 9 Cir. 1953, 209 F.2d 178 the Ninth Circuit relied upon The Columbia, D.C.E.D.N.Y.1877, Fed.Cas. No. 3,035; The Mary Steele, D.C.D.Mass.1874, Fed. Cas. No. 9,226; Taber v. Jenny, D.C.D. Mass.1956, Fed.Cas. No. 13,720; and United States v. Laflin, 9 Cir. 1928, 24 F.2d 683. Two of these cases are clearly not authority for creating a special rule

allowing recovery of loss of prospective wages by even fishermen where there has been a negligent but unintentional interference with their contractual relationship with their employer. In Taber the wages involved were not prospective wages but had already been earned in that the wages claimed were a "lay" or "share" of a whale which had already been caught. Moreover, and most importantly, the earned "lay" was lost because the whale was stolen by another fishing vessel. Thus, the interference with the crew's contractual right to a "lay", the equivalent of wages, was not only tortious but patently intentional. In Laflin as in that line of cases dealing with unlawful sealing in the Bering Sea the Court was by statute, namely the Act of Congress of June 7, 1924, 43 Stat. 595, given jurisdiction over claims of American citizens "for damages or loss occasioned by or resulting from the seizure, detention, sale, or interference with their voyage by the United States of vessels charged with unlawful sealing in the Bering Sea." Obviously this case, dealing with a cause of action created by statute and dealing with a cause of action arising from a wrongful and intentional interference, is no authority for the creation of a special rule permitting a recovery where there has been an unintentional but negligent interference with contractual rights. This Court can only conclude that, and is in complete accord with the statement of Judge Bailey Aldrich in the Casado case that:

\* \* \* \* \* \*

"The only way to permit recovery here would be to say frankly, as has been done by the Ninth Circuit, that a 'special rule' obtains for fishermen. Carbone v. Ursich, 9 Cir., 209 F.2d 178, 182, overruling Borcich v. Ancich, 9

Cir., 191 F.2d 392, certiorari denied 342 U.S. 905, 72 S.Ct. 293, 96 L.Ed. 677, rehearing denied 342 U.S. 934, 72 S.Ct. 374, 96 L.Ed. 695. With all respect to that learned court, I do not believe that to say 'seamen are the favorites of admiralty' should be to create a corresponding class of villains on whom to impose a new type of liability. In Carbone v. Ursich there was only a four day interruption of fishing. But suppose a fishing vessel were sunk outright. Would all members of the crew be entitled to compensation until they obtain new employment, or if that employment were on a less profitable ship, for the difference? I believe the fundamental principles of liability should be the same, whether employees are fishermen, or factorymen." (Casado v. Schooner Pilgrim, Inc., D.C.D. Mass.1959, 171 F.Supp. 78, 80).

Accord: Robins Dry Dock & Repair Co. v. Flint, 1927, 275 U.S. 393, 48 S.Ct. 134, 72 L.Ed. 290; Borcich v. Ancich, 9 Cir. 1951, 191 F.2d 392 cert. den. 1952, 342 U.S. 905, 72 S.Ct. 293, 96 L.Ed. 677, reh. den. 1952, 342 U.S. 934, 72 S.Ct. 374, 96 L.Ed. 695 (admittedly reversed in Carbone v. Ursich, 9 Cir. 1953, 209 F.2d 178, 182); Hayes v. Luckenbach S. S. Co., D. C.D.Mass.1950, 92 F.Supp. 684; Casado v. Schooner Pilgrim, Inc., D.C.D.Mass. 1959, 171 F.Supp. 78; Petition of Clipper Fishing Corporation, Inc., D.C.D.Mass. 1961, 194 F.Supp. 827; and Baird v. The Chesapeake & Potomac Telephone Co., 1955, 208 Md. 245, 117 A.2d 873.

Accordingly, the exceptions of Elder Dempster to libellant Henderson's libel and to the libel of his fellow crew members are sustained. The libel in Admiralty No. 4944 and the libel in Admiralty No. 4945 are hereby dismissed.