Marcus A. FOWLES, Dominick A. Cannell, Benjamin Bellamy, Zenon E. Rivera, and Rafael Valezquez, suing on behalf of themselves and all other members of the unlicensed crew of the S/S EXCALIBUR, Libellants,

v.

AMERICAN EXPORT LINES, INC., Respondent.

No. 64 Ad. 535.

United States District Court
S. D. New York.
June 13, 1969.

---

Abraham E. Freedman, New York City, for libellants.

Haight, Gardner Poor & Havens, New York City, for respondents; by M. E. DeOrchis and LeRoy S. Corsa, New York City, of counsel.

## OPINION

EDELSTEIN, District Judge.

 Plaintiffs, five crew members of defendant's vessel, S/S EXCALIBUR, brought this suit, purportedly as a class action,[1] to recover one month's unearned wages pursuant to 46 U.S.C. § 594. The facts developed at trial, by and large undisputed, are quite simple. The plaintiffs were signed on defendant's passenger vessel on March 2, 1964, for a voyage to one or more ports in the Mediterranean Sea. Three days later, while at sea, a fire broke out in the one and only galley on board ship when cooking grease flared as the cooks were grilling steaks. Despite efforts of the officers and crew to extinguish the fire, the galley was completely gutted and rendered inoperative for the service of regular hot meals to either the passengers or the crew.[2] The Master then decided to return to New York and the voyage was abandoned; the crew was discharged on March 7, 1964. All crew members were paid earned wages up to March 7, 1964, the last day each man worked. Plaintiffs now claim that they are entitled to one month's wages within the meaning of 46 U.S.C. § 594, while defendants maintain that under 46 U.S.C. § 593, defendants are not liable for the payment of any additional wages.

These statutes read as follows:

46 U.S.C. § 594. *Right to wages in case of improper discharge.*

"Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are

---

1. Class Action. Defendants raised at trial the issue of whether this was a proper class action. The thrust of this argument is twofold, that a class action is not permitted in admiralty because at the time the suit was brought there was no admiralty rule similar to F.R.Civ.P. 23, and that plaintiff has failed to give the constitutionally mandated notice to all the class members.

Defendants first contention is quite erroneous and flies in the face of F.R.C.P. 1, which states:

Rule 1. *"Scope of Rules*

"These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy, and inexpensive determination of every action. As amended [Dec. 29, 1948, eff. Oct. 20, 1949;] Feb. 28, 1966, eff. July 1, 1966."

Defendant's second contention, however, is meritorious. Judge Medina, writing for the court in the recent case of Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968) specifically held that notice is required in all representative ac-

tions as a matter of due process. (at 564) None was given here. In light of the res judicata consequences which may follow a judgment against plaintiffs here, the plaintiffs' contention that "notice of the judgment" will suffice, is ludicrous.

The action, insofar as it purports to be a class action, is dismissed.

2. A full list of the damage done follows:
 (1) Deck girders above the Galley were buckled and fractured. (2) Ventilation ducts were buckled and distorted. (3) Piping for potable water and piping for fire mains was damaged by intense heat. (4) Main deck plating was buckled. (5) Watertight door to passageway was damaged. (6) Deck plating in passageway was buckled and tiles loosened. (7) Lighting circuits damaged by fire. (8) Electric power panel damaged by fire. (9) Fire alarm system damaged by heat and water. (10) Fire door operating system damaged by heat and fire. (11) General alarm system damaged by fire. (12) Emergency loudspeaker system damaged by fire. (13) Cooking ovens damaged by fire. (14) Galley fuel oil system damaged by fire. (15) Deck beams badly bowed. (16) Telephone between bridge and engine room made inoperative by fire.

earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on producing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

46 U.S.C. § 593. *Termination of Wages by Loss of Vessel; Transportation to Place of Shipment.*

"In cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the loss or wreck of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but not for any further period. Such seaman shall be considered as a destitute seaman and shall be treated and transported to port of shipment as provided in sections 678 and 679 of this title. This section shall apply to fishing and whaling vessels but not to yachts."

■ The crucial issue for this court to determine is whether the S/S EXCALIBUR was wrecked within the meaning of 46 U.S.C. § 593 such that the plaintiffs herein would not be entitled to any wages other than those they had actually earned.[3] The case law is clear that if the EXCALIBUR was wrecked within the meaning of Section 593 whatever rights the seamen might have had under Section 594 would have been extinguished. Avgoustis v. Erini Shipping Co., 177 F.2d 461 (2d Cir. 1949).[4]

■ Plaintiffs would limit the meaning of the word "wreck" as it is used in Section 593 to refer only to a vessel

which is either sunk or absolutely unnavigable, but this court does not feel that such a narrow construction of the word "wrecked" is mandated by the case law or compelled as a matter of public policy. Rather, this court holds that a ship is wrecked within the meaning of Section 593 when anything happens to the ship, not within the control or fault of the owner, which renders the ship incapable of carrying out the maritime adventure in respect of which the seaman's contract was entered into. This is the accepted definition of the term as the English courts have construed it, *see* Barras v. Aberdeen Steam Trowling and Fishing Co., 1933 A.C. 402; The Olympic v. H. M. S. Hawke (1913).[5]

In truth this definition is but a restatement of the longstanding American rule. Typical of the long line of cases holding thus is The Charles D. Lane, 106 F. 746 (D.D.C.1901) in which case the court upheld the above definition as follows:

"Under the circumstances shown it cannot be said that the act of the master in discharging his crew was a wrongful act. It was necessary for him to declare the voyage terminated. The necessity arose from encountering perils of navigation which all mariners understand may happen to any ship on any voyage. Every contract of shipment made by seamen is made in view of such a contingency; and when the contingency happens, and the voyage is broken up, without fault on the part of the captain or the ship, but wholly by force of the natural elements, it must be assumed that the contract is terminated in a manner contemplated and impliedly consented to by the parties, and the case does not come within the provisions of § (593) * * * A ship, to be lost or

---

3. It is conceded that these wages were paid.

4. "In such a situation, their rights are specially limited by 46 U.S.C.A. § 593 which has been uniformly and, as we hold, properly construed to preclude recovery under 46 U.S.C.A. § 594." *Avgoustis* at 463, by Judge Augustus Hand.

5. Insofar as § 593 was adopted from the older English statute, the British learning of the definition of the term is of some relevance to us here. See section 158 Merchant Shipping Act, 1894.

wrecked within the meaning of the words of that section, does not have to be completely destroyed. *I hold that if a vessel is lost to her owners without fault on their part, or if she is so injured by encountering ordinary perils of navigation as to be unfit to complete the particular voyage commenced, the terms of the statute are met,* and the seamen receive all they can legally claim when they are paid wages at the contract rate for the time of actual service." At 747. (emphasis added)

*Accord,* Flanagan v. U. S. and Brazil Mail SS Co., 30 F. 202 (E.D.N.Y.1886); The Staghound and The Gamecock, 97 F. 973 (D.Or.1899); The Quaker City, 290 F. 409 (D.Md.1923); Avgoustis v. Erini Shipping Co., 177 F.2d 461 (2d Cir. 1949). More recently, in Henderson v. Arundel Corp., 262 F.Supp. 152 (D.C. Md.1966) aff'd per curiam 384 F.2d 998 (4th Cir. 1967), the court adopted this definition:

> "In order to come within the confines of (§ 593) it is not necessary that the vessel 'be completely destroyed, but that, if she is so injured by encountering ordinary perils of navigation as to be unfit to complete the particular voyage commenced, the terms of the statute are met, and the seamen receive all they can legally claim when they are paid wages at the contract rate for the time of actual service' with the ship. * * * (citing the *Quaker City, supra*) * * * It is only where it is alleged that the voyage has been terminated due to the fault of the master or the owner that the courts have recognized the possibility of a recovery by a seaman of a loss of future or anticipated wages." (262 F.Supp. at 155)

If, however, the termination of the voyage was occasioned by the fault or negligence of the owner, or his agent, the Master, then there might well be grounds permitting a statutory recovery under Section 593.[6]

This was the gist of The Staghound and The Gamecock, *supra,* where the court held that the "[f]ailure of the voyage * * * [was due]' wholly to the fault and carelessness of the owners in undertaking the voyage under the circumstances." 97 F. at 974.

▪ The court had earlier found that "[i]t was a matter of common knowledge before these boats sailed that they were wholly unfit for the voyage upon which they were about to go; * * * [I]t turned out that in a smooth sea, in pleasant weather, the two boats were so unseaworthy that they were unable to proceed * * *." At 973–974.

*Accord,* Henderson v. Arundel Corp., *supra.*

Section 594 cases are useful as analogies here. Although a seaman must prove *inter alia* that he was "improperly discharged"[7] in order to recover one month's wages under Section 594, it is established that if his discharge was caused by the negligence of the owner or Master, notwithstanding the premature termination of the voyage or the loss of the vessel, the seaman may nevertheless collect his one month's wages. Thus, if the voyage is prematurely terminated because of "the unseaworthiness of the [vessel] by reason of [the owner's] lack of due diligence," it is clear that plaintiffs have satisfied their burden under Section 594 as to the impropriety of their discharge. The Louise, 54 F.Supp. 157, 159 (D.Md.1943). *Accord:* The Heroe, 21 F. 525 (D.C.Del.1884);

---

6. But see Flanagan v. U. S. & Brazil Mail SS Co., 30 F. 202 (E.D.N.Y.1886) in which case the court intimated that even if the stranding of the steamer were due to the intoxication of the Master, that nevertheless the vessel would be deemed wrecked for § 593 purposes.

7. Newman v. United Fruit Co., 141 F.2d 191 (2d Cir. 1944), cert. denied 323 U.S. 711, 65 S.Ct. 37, 89 L.Ed. 572 (1944); Isthmian Lines, Inc. v. Haire, 334 F.2d 521 (5th Cir. 1964); Sergeant v. The O. M. Bernuth, 122 F.Supp. 589 (S.D. Tex.1954) aff'd Bernuth, Lembecke Co. v. Sergeant, 217 F.2d 704 (5th Cir. 1955); The Herbert L. Rawding, 55 F. Supp. 156 (E.D.S.C.1944).

Davis v. Faucon, Fed. Case No. 3, 632b (S.D.N.Y.1843).

Similarly, if the voyage is cancelled and the fault can be laid on the owner, the seaman will have a meritorious Section 594 cause of action. Vlavianos v. The Cypress, 171 F.2d 435 (4th Cir. 1948), cert. denied 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732 (1949).

■ It can thus be said that the negligence or fault of the owner acts as a two-pronged spear, for on the one hand it can be used affirmatively to prove a seaman's claim that he was "improperly discharged" within the meaning of Section 594, and on the other hand it can be used defensively by the seaman to refute the defendant's contention that the ship was a loss or wreck within the meaning of Section 593.[8]

Accordingly, if the EXCALIBUR was incapable of carrying out the maritime adventure in respect of which the seamen's contract was entered into because she had encountered ordinary perils of navigation and had been rendered—without fault on the part of the owners—unfit to complete the voyage at hand, the vessel was indeed wrecked within the meaning of Section 593.

■■ The voyage in March 1964 was a 42-day passenger cruise. Eighty-six passengers had each paid a substantial sum of money for first class accommodations for the entire duration of their pleasure cruise. It is undisputed that after the fire the only food which could be served the passengers and crew was hot dogs and cold cuts. Moreover, there was evidence, and the court finds that the fire caused certain structural damage which could have been quite dangerous had the vessel continued on its journey. Nor is it seriously contested by the plaintiffs that as a practical matter the Master of the vessel had any choice but to return to New York. Neither can there be any serious question but that a fire—devoid of negligence on the part of the owner or Master—on a vessel at sea, can be an ordinary peril of navigation. However, a fire caused by the negligence of the owner or Master of the vessel would not be such a peril. To this end the plaintiffs have introduced testimony that there was "heavy paint" on the bulkhead next to the galley. This fact, in the opinion of counsel for the plaintiffs, supports a finding that the vessel was unseaworthy and that the defendant was negligent in permitting such a fire hazard to exist. This court disagrees. On March 3, the vessel's galley and fire fighting equipment were inspected and passed by the United States Coast Guard. There was undisputed testimony that the ship's captain or his delegate inspected the galley at frequent and periodic intervals and found it clean and in safe condition. Accordingly, this court finds that the defendants were in no way negligent in keeping the galley clean and free from fire hazards.

The S/S EXCALIBUR was in summary rendered incapable of carrying out the maritime adventure in which she was engaged. She was a wreck within the meaning of Section 593. Defendant must have judgment. [9]

The foregoing constitutes the required conclusions of law and findings of fact.

So ordered.

8. See Henderson v. Arundel Corp., *supra*, 262 F.Supp. at 156, 157.

9. An issue of release was raised by the defendant, but it is unnecessary to consider it.