**Roy LUNQUIST et al.**

v.

**SS SEATRAIN MARYLAND, her boilers, engines, apparel, furniture, etc.**

Civ. No. 18988.

United States District Court,
D. Maryland.

June 8, 1973.

Ronald L. Spahn, Baltimore, Md. (Edward Pierson, Baltimore, Md., on the brief), for plaintiffs.

John T. Ward, Baltimore, Md. (Ober, Grimes & Shriver, Baltimore, Md., on the brief), for defendant.

THOMSEN, District Judge.

The claims of the four plaintiffs in this Rule 9h case raise a number of

questions under two statutes, which must be read together:

46 U.S.C. § 594. "Right to wages in case of improper discharge.

"Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

46 U.S.C. § 593 (The Wreck Act). "Termination of wages by loss of vessel; transportation to place of shipment.

"In cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the loss or wreck of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but not for any further period. Such seaman shall be considered as a destitute seaman and shall be treated and transported to port of shipment as provided in sections 678 and 679 of this title. * * * "

The four plaintiffs, deck officers,[1] signed articles for a foreign voyage aboard the SS Seatrain Maryland, to Vietnam and return, estimated to take two or three months. All were aboard the vessel in the early morning hours of November 15, the scheduled day of departure, when a rupture of the starboard boiler occurred, of sufficient gravity to cause the termination of the voyage and the discharge of the crew, including the plaintiffs, on November 18.

Negligence of the crew, particularly the Chief Engineer, was a cause of the rupture of the boiler. After having had warning of trouble, the Chief Engineer had ordered the fires relighted without taking adequate steps to learn whether the danger of doing so had been abated. No fault on the part of any of the plaintiffs was a cause of the accident or their discharge.

On November 18 all plaintiffs were discharged, without fault on their part and without their consent. They were paid their wages earned to the date of discharge. Lunquist continued aboard the vessel as Chief Mate, signed new articles on December 11, and lost no time or wages. Wilson and Powell asked for and received leave of absence while repairs to the vessel were being made, rejoined the vessel and signed new articles on December 11, and served thereafter at the same rate of pay and in the same capacity they had signed on for in November. The owner of the vessel offered to fly Marozas to the West Coast and employ him in the same capacity there, but he refused, "for personal reasons", and signed on another vessel on November 25.

Defendant concedes that each plaintiff is entitled to one month's wages under § 594 unless his claim is barred (a) by the Wreck Act, § 593, or (b) by waiver or failure to mitigate his damages.

■ (a) There was a "loss or wreck of the vessel" as those terms are used in the Wreck Act. The mere fact that the rupture of the boiler occurred while the vessel was still moored to a pier and not on the high seas does not prevent the application of § 593. The crew had signed articles, had come aboard to begin the voyage, and after the rupture of the boiler they were discharged. The St. Paul, 77 F. 998 (S.D.N.Y.1897).

---

1. Roy Lunquist, Chief Mate, base pay—$1,097.98 per month; Arthur Wilson, Second Mate, base pay—$780.90 per month; B. Z. Powell, Third Mate, base pay—$721.09 per month; Peter A. Marozas, Third Mate, base pay—$721.09 per month.

■ However, it seems now to be generally accepted that if the loss or wreck was caused by negligence on the part of the owner or master, the owner is not freed from liability for wages under § 594. See Henderson v. Arundel Corp., 262 F.Supp. 152, 155 et seq. (D. Md.1966), aff'd per curiam, 384 F.2d 998 (4 Cir. 1967); Borup v. Western Operating Corp., 130 F.2d 381, 386 (2 Cir. 1942), quoted in *Henderson*; Fowles v. American Export Lines, Inc., 300 F.Supp. 1293 (S.D.N.Y.1969), aff'd 449 F.2d 1269 (2 Cir. 1971); Norris, The Law of Seamen, 3d Ed., § 442.

■ No case has been cited or found which deals with the question whether the negligence of a chief engineer should be imputed to the owner in such a situation. In Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943), a case dealing with the analogous principle of limitation of liability, the Court said:

" * * * In those cases it is held that liability may not be limited under the statute where the negligence is that of an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred. Spencer Kellogg & Sons v. Hicks, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903, and cases cited; 3 Benedict, Admiralty (6th ed.) § 490. But those cases are no authority for holding that the negligence of a subordinate may be imputed to an individual owner so as to place him in privity within the meaning of the statute. A corporation necessarily acts through human beings. The privity of some of those persons must be the privity of the corporation else it could always limit its liability. Hence the search in those cases to see where in the managerial hierarchy the fault lay." 317 U.S. at 410, 411, 63 S.Ct. at 293.

It is generally recognized that the "chief engineer" is the person to whom the owner has delegated responsibility for the mechanical propulsion of the vessel and the equipment in the engine room. Under the International Labor Organization Draft Convention Numbered 53, ratified by the President on September 1, 1938, with understandings appended, and adopted by Congress with specified modifications, 46 U.S.C. §§ 224a and 241, the term " 'chief engineer' means any person permanently responsible for the mechanical propulsion of a vessel". This court concludes that the negligence of the chief engineer should be imputed to the owner in this case, as negligence of the master would have been.

■■ (b) It is clear that § 594 is a remedial statute "intended to afford a simple summary method of establishing and enforcing damages which are frequently difficult of definite ascertainment but are fixed by the statute as complete satisfaction for the breach. The Steel Trader, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326." Vlavianos v. The Cypress, 171 F.2d 435, 439 (4 Cir. 1948), cert. den. 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732; Norris, op. cit., § 366 et seq. There is no duty on the part of a discharged seaman to mitigate damages. Newton v. Gulf Oil Co., 180 F.2d 491 (3 Cir. 1950); Neil v. Gulf Oil Co., 101 F.Supp. 347 (E.D.Pa.1951). If the plaintiffs had been unable to obtain new employment for several months, their recovery would have been limited to one month's wages; the fact that they obtained employment in less than a month does not prevent their recovery of the one month's wages fixed by the statute.

■ There is authority to the effect that a seaman may waive his claim under § 594 by accepting new employment with the same employer. The John R. Bergen, 122 F. 98 (S.D.N.Y.1903). See Salyer v. American Export Isbrandtsen Lines, Inc., 262 F.Supp. 364 (S.D.N.Y. 1966); Moore v. Marine Transport Lines, Inc., 1950 Am.Mar.Cas. 1592, 1594 (S.D.Tex.1950). These cases are contrary to Newton v. Gulf Oil Co., supra, and Neil v. Gulf Oil, supra, and to the spirit of Vlavianos v. The Cypress,

supra. This court concludes that a claim under § 593 is not waived merely by accepting employment from the same or another employer during the month. If the right to recover under § 593 can be waived, there must be an intentional relinquishment of a known right. There was no such intentional relinquishment by these plaintiffs.

(c) Defendant challenges the right of plaintiffs to receive interest on the amounts recovered, arguing that § 594 provides for liquidated damages, and precludes the allowance of interest thereon. Defendant relies on Brooklyn Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), where the Court considered the question whether an employee recovering minimum wages *and* liquidated damages under 16(b) of the Fair Labor Standards Act is also entitled to interest on the sums so recovered. The Court said:

"* * * As was indicated in our decision in Overnight Motor Co. v. Missel, *supra* [316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682] § 16(b) authorizes the recovery of liquidated damages as compensation for delay in payment of sums due under the Act. Since Congress has seen fit to fix the sums recoverable for delay, it is inconsistent with Congressional intent to grant recovery of interest on such sums in view of the fact that interest is customarily allowed as compensation for delay in payment. To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages. See Royal Indemnity Co. v. United States, 313 U.S. 289, 296, 61 S.Ct. 995, 85 L.Ed. 1361." 324 U.S. at 715, 65 S.Ct. at 906.

■ The liquidated damages provided for by § 594 were not authorized "as compensation for delay in payment" of anything. Their purpose was stated in the passage from Vlavianos v. The Cypress, quoted above. Interest on the amounts allowed under § 594 may be awarded, and should be awarded in this case, at the rate of 6% per annum from the date of discharge. See, generally, Royal Indemnity Co. v. United States, 313 U.S. 289, 295, 297, 61 S.Ct. 995, 85 L.Ed. 1361 (1941); Robert C. Herd & Co. v. Krawill Mfg. Corp., 256 F.2d 946 (4 Cir. 1958); The Bill, 55 F.Supp. 780, 784 (D.Md.1944); 22 Am.Jur.2d (Interest § 179), p. 256 et seq.

Judgment will be entered for plaintiffs.