**Anthony CASADO et al.**
v.
**SCHOONER PILGRIM, INC.**
**Manuel CARRICO et al.**
v.
**SCHOONER PILGRIM, INC.**
Adm. Nos. 58–33, 58–59.

United States District Court
D. Massachusetts.
March 6, 1959.

Melvin I. Bernstein and Solomon Sandler, Gloucester, Mass., for plaintiff Carrico.

Thomas H. Walsh, Myron Boluch, Boston, Mass., for defendant.

Charles L. Ayers, Richard L. Hull, Gloucester, Mass., for plaintiff Casado.

ALDRICH, District Judge.

■ These are two libels brought against Schooner Pilgrim, Inc., owner of the F/V Pilgrim, by certain individuals who allege they were members of the crew and master, respectively, of the O/S Evelina M. Goulart. The libel of the master, Count 2 as amended, alleges that in addition he was the president and principal stockholder of the corporation Evelina M. Goulart, Inc., the owner of the Goulart, and was the port

engineer of the vessel. The libels allege that on the date in question, while the Goulart was properly secured to a pier in her home port of Gloucester, the Pilgrim negligently collided against her, requiring her to be dry-docked, as a result of which libellants lost wages for a period of five weeks. The respondent filed exceptions to the libels. At the hearing thereon I treated these exceptions as in the nature of motions for summary judgment, and permitted the record to be amplified by oral statements of counsel. It thereby appeared that the libellants had no actual contracts for sea duty, but currently had sites aboard the vessel; that it was customary for sites to continue on subsequent voyages if there were such; that during the detention period there would have been one or more voyages; and that the general employment situation in Gloucester was such that it was a foreseeable fact that sites on other vessels could not be obtained for that interval on such short notice.

I take this case as being simply one where employees at will on a vessel seek to show that negligent conduct directed towards the vessel has foreseeably, and to that extent proximately, deprived them of a future opportunity to work, with resultant loss of income.[1] In my opinion that gives them no cause of action.

While suits based upon intentional tortious interference with an existing employment relationship have been allowed even though the employment was simply at will, see, e. g., Berry v. Donovan, 188 Mass. 353, 74 N.E. 603, 5 L.R.A.,N.S., 899, appeal dismissed 199 U.S. 612, 26 S.Ct. 745, 50 L.Ed. 333, recovery cannot be had by an employee where claim is made for loss of earnings resulting from mere negligent injury to the employer's person or property. See Stevenson v. East Ohio Gas Co., Ohio App., 73 N.E.2d 200; cf. Chelsea Moving & Trucking Co. v. Ross Towboat Co., 280 Mass. 282, 182 N.E. 477. Libellants argue that they work on a "lay," or on "shares," and that this makes a difference. I do not agree. In the first place, the use of the word "share" connotes overtones which may be misleading. A fisherman, including the master, is an employee. He has no interest of any kind in the ship. The fact that the amount of his compensation is determined by the catch does not mean that it is not in essence wages.[2] That he is an employee is illustrated by the fact that no one disputes his right to maintenance and cure, or to recover under the Jones Act, 46 U.S.C.A. § 688, both of which require an employer-employee relationship. Turner v. Wilson Line of Massachusetts, Inc., 1 Cir., 242 F.2d 414. Any claim he would have against respondent would be based on this contractual relationship, and nothing else. Moreover, it should be noted that in so far as future voyages are concerned, the contractual relationship, if it exists at all, is of the weakest sort. See Hayes v. The Lucky Star, D.C.D. Mass., 105 F.Supp. 176.

Libellants argue that the vessel owner can recover his lost share of profits, therefore why not the crew? This is a faulty analysis. The owner does not recover lost profits, as such. He recovers for the damage to his property interest in his vessel, which may include loss of use.

> "[T]he owners of the injured vessel are entitled to recover for the loss of her use, while laid up for

---

1. The circumstance that the master was an officer and stockholder of the corporate owner of the Goulart is quite immaterial. If his interest in that respect was damaged, recovery by the corporation (which sues in Count 1) is the appropriate procedure. Nor do I see that the master's being shore captain adds to his rights.

2. See discussion in Putnam v. Lower, 9 Cir., 236 F.2d 561. See, also Low v. Pew, 108 Mass. 347, holding that the owners have no salable interest in a future catch, while at the same time recognizing that the crewman's lay is assignable as a chose in action in the same way that future wages under an existing contract may be assigned.

repairs. When there is a market price for such use, that price is the test of the sum to be recovered. When there is no market price, evidence of the profits that she would have earned if not disabled is competent * * *." The Potomac, 105 U.S. 630, 631, 632, 26 L.Ed. 1194.

This merely means that prospective net profits to be earned by the vessel may be competent to aid in determining the value of the damaged property interest. It is not at all to say that additional profits which might have been earned by others with no interest in the vessel, but incident to its operation, are assessable against the respondent. In this respect, the crew members should stand in no better position than the chandler who normally outfits the vessel or the person who supplies the fuel.

The only way to permit recovery here would be to say frankly, as has been done by the Ninth Circuit, that a "special rule" obtains for fishermen. Carbone v. Ursich, 9 Cir., 209 F.2d 178, 182, overruling Borcich v. Ancich, 9 Cir., 191 F.2d 392, certiorari denied 342 U.S. 905, 72 S.Ct. 293, 96 L.Ed. 677, rehearing denied 342 U.S. 934, 72 S.Ct. 374, 96 L.Ed. 695. With all respect to that learned court, I do not believe that to say "seamen are the favorites of admiralty" should be to create a corresponding class of villains on whom to impose a new type of liability. In Carbone v. Ursich there was only a four day interruption of fishing.[3] But suppose a fishing vessel were sunk outright. Would all members of the crew be entitled to compensation until they obtained new employment, or if that employment were on a less profitable ship, for the difference? I believe the fundamental principles of liability should be the same, whether employees are fishermen, or factorymen.

In Adm. 58–33 the libel is dismissed. In Adm. 58–59 Count 2 will be dismissed.

---

3. It is to be noted that in Taber v. Jenny, D.C.D.Mass., 23 Fed.Cas. page 605, No. 13,720, relied on by the court in Carbone, the whale had already been caught.