Gilbert K. LEES, and Edith Lees,
and
Jerry MEAD, Plaintiffs,

v.

BOB–LO COMPANY, Subsidiary of Browning Lines, Incorporated, a corporation, and Milton Moore, jointly and severally, Defendants.

Civ. A. Nos. 29083, 29678.

United States District Court,
E. D. Michigan, S. D.

Oct. 8, 1970.

———◆———

Victor G. Hanson, James F. Finn, M. Arthur Arduin, Detroit, Mich., for Gilbert K. Lees and Edith Lees.

Robert Goren, August, Frimet, Goren & Murphy, Detroit, Mich., for Jerry Mead.

Charles D. Meadows, Foster, Meadows & Ballard, Detroit, Mich., for Bob-Lo Company.

Robert A. Jenkins, Scholl, Jenkins, Robinson & Stieg, Detroit, Mich., for Milton Moore.

## OPINION

FREEMAN, Chief Judge.

This action arises out of a collision on the Detroit River between the Steamer S.S. Ste. Claire, owned by defendant Bob-Lo Company, and the pleasure cruiser Ten Gees, owned by defendant Milton Moore. Plaintiffs, passengers on the Ten Gees at the time of the incident, allege that the collision resulted from negligence attributable to both defendants; and that this negligence caused injuries to plaintiffs for which they seek damages. The parties agree that the Detroit River, scene of the accident, is a

**1108**

part of the navigable waters connecting lakes in the United States.

■ Although there is no diversity of citizenship, a federal district court has admiralty and maritime jurisdiction over suits involving torts committed on vessels while on navigable waters of the United States, 28 U.S.C.A. § 1333; The Genesee Chief, 53 U.S. (12 How.) 443, 13 L.Ed. 1058 (1851); The Eagle, 75 U.S. (8 Wall.) 15, 19 L.Ed. 365 (1869).

The case is now before the court on defendants' motion to strike plaintiffs' demand for a jury trial. This motion must be granted unless plaintiffs can establish that they are seamen or that their suit is within the requirements of 28 U.S.C.A. § 1873; for

> "[T]here is no jury trial in admiralty with the exception of matters covered by 28 U.S.C.A. § 1873 * * *. The Jones Act merely affords the *injured seaman* the choice between a suit in admiralty without a jury and a suit on the civil side of the docket with a jury." Texas Menhaden Co. v. Palermo, 329 F.2d 579, 580 (5th Cir.1964).

The plaintiffs are not, nor do they contend to be, seamen entitled to a jury trial under the Jones Act. Instead, plaintiffs maintain they have a right to a jury trial under 28 U.S.C.A. § 1873, which provides:

> "In any case of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons or upward, enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation between places in different states upon the lakes and navigable waters connecting said lakes, the trial of all issues of fact shall be by jury if either party demands it."

But plaintiffs have failed to introduce any proof that either of the vessels involved in the challenged collision was: (1) twenty tons or upward; and (2) enrolled and licensed for the coasting trade; and (3) employed in the business of commerce and navigation between places in different states, as required by Section 1873. Strusa v. Minn. Atlantic Transit Co., 13 F.Supp. 872 (W.D.N.Y. 1936).

■ In addition, defendant Moore states in an affidavit that his vessel, the Ten Gees, is neither "enrolled and licensed for the coasting trade" nor "employed in the business of commerce and navigation between places in different states." Since Moore's statements are unchallenged, this court finds that the Ten Gees does not meet the specification of Section 1873 and, therefore, concludes that plaintiffs are not entitled to a jury trial against defendant Moore.

Defendant Bob-Lo, owner of the second vessel involved in the collision, has also submitted an affidavit in which its President states that:

> " * * * the Steamer STE. CLAIRE was not engaged in * * * the business of commerce and navigation between places in different states of the United States and has solely engaged in commerce and navigation between places within the State of Michigan and the Province of Ontario, Canada."

Plaintiffs concede the accuracy of these facts.

The plaintiffs and defendant Bob-Lo disagree, however, on whether these facts entitle plaintiffs to a jury trial under Section 1873. It is defendants' position that for a party to have a right to a jury trial under Section 1873, the vessel involved in the action must be engaged in the business of navigation or commerce between states of the United States. Since the S.S. Ste. Claire traveled only between Canada and Michigan, defendants contend that Section 1873 does not give plaintiffs the right to a jury trial.

On the other hand, plaintiffs maintain that Section 1873's language "between states in different states" refers to both states of the United States and the foreign nation state of Canada. Plaintiffs thus conclude that if the other requirements of Section 1873 are met, they have a right to a jury trial against de-

fendant Bob-Lo since its vessel was engaged in the business of navigation between Michigan and Canada.

This court, after extensive research, has been able to find only one case construing the disputed phrase in 28 U.S.C.A. § 1873, although this section has remained substantially unchanged since its enactment in 1845. In that case, decided in 1884, the court quoted the language of Rev.St. § 566, the counterpart of Section 1873, and observed in dicta:

> "It creates what appears to be a very unjust discrimination in favor of the particular classes of vessels. * * * [W]hy it should be limited to American vessels *plying between domestic ports*, and denied to all foreign vessels, and to *American vessels engaged in foreign trade*, it is impossible to conceive." (Emphasis added.) The Empire, 19 F. 558 (E.D.Mich.1884).

Unfortunately, the court did not discuss the basis on which it decided that the language "between places in different states" refers only to domestic states. Nor does the history surrounding the enactment of Section 1873 shed any light on the proper construction of the word "states."

Section 1873 was originally part of an 1845 statute passed by Congress to expand district court admiralty jurisdiction to the Great Lakes and their navigable connecting waters. 5 Stat. 726, 727. Such enactment was deemed necessary because the United States Supreme Court had earlier held in The Steamboat Thomas Jefferson, 23 U.S. 428, 10 Wheat. 428, 6 L.Ed. 358 (1825), that under the Constitution and Judiciary Act of 1789, admiralty jurisdiction was confined to tidal waters. But in The Steamboat Thomas Jefferson, *supra*, Mr. Justice Story suggested that Congress, under its power to regulate commerce, might nevertheless extend admiralty jurisdiction to the western waters. Twenty years later, Congress passed 5 Stat. 726, 727, providing that:

> " * * * the District Courts of the United States shall have, possess, and

exercise the same jurisdiction in matters of contract and tort, arising in, upon, or concerning, steamboats and other vessels of twenty tons burden and upwards, enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different states and territories upon the lakes and navigable waters connecting said lakes, as is now possessed and exercised by the said courts in cases of the like steamboats and other vessels employed in navigation and commerce upon the high seas, or tide waters, within the admiralty and maritime jurisdiction of the United States; * * * saving, however, to the parties the right of trial by jury of all facts put in issue in such suits, where either party shall require; * * *." (Emphasis added.) The Western States, 159 F. 354, 356–357 (2nd Cir.1908).

Subsequently, however, in The Genesee Chief, *supra*, 53 U.S. at 457, the Supreme Court reversed its ruling in The Steamboat Thomas Jefferson and decided that: "The lakes and waters connecting them are public waters; and we think are within the grant of admiralty and maritime jurisdiction in the Constitution of the United States" and the Judiciary Act of 1789. The Court also rejected Mr. Justice Story's Commerce Clause theory and found Congress to be acting under its admiralty power (Const. Art. III, § 2) in passing 5 Stat. 726, 727.

Yet, the arguments of counsel in The Genesee Chief, *supra*, indicate Congress, in adopting the 1845 Act, erroneously believed that it was operating under the Commerce Clause and that it was tranferring jurisdiction from the common law side of the federal district court to the admiralty side. It was this mistaken belief that Commerce Clause powers were being exercised which led to the jury trial savings provision. For it was assumed that Congress could not convert a common law action, with its Seventh Amendment right to a jury trial, into an admiralty matter, which historically did

not have a right to a jury trial, without preserving that right.

But after the Supreme Court ruled that the western lakes were within the grant of admiralty jurisdiction in the Constitution, the 1845 grant of jurisdiction was held to be totally inoperative, and only the jury trial provision remained effective. The Eagle, 75 U.S. (8 Wall.) 15, 19 L.Ed. 365 (1869). Thus, the jury trial savings clause, originally enacted to preserve the Seventh Amendment right to a jury trial, which Congress erroneously believed existed, was then construed to extend the right to a jury trial into admiralty proceedings meeting the specifications of 5 Stat. 726 (counterpart of the present Section 1873). The Eagle, *supra.*

Following that construction, the savings provision of the 1845 Act was incorporated into Section 566 of the Revised Statutes of 1873 as a positive grant of the right to a jury trial. The language used in Section 566 is substantially identical to the language now found in 28 U.S.C.A. § 1873.

This history of Section 1873, however, does not seem to provide any assistance in resolving the issue of whether the word "states" in that section should be construed to mean only domestic states or to include both domestic and foreign nation states. Nor does this history suggest why our court, almost a century ago in the *Empire* case, adopted the narrower definition of the word "states." Possibly, the only explanation for the court's construction of "states" in *Empire* is common sense. For common sense suggests that when the word "states" is used without further explanation in the laws of a nation comprised of several states, it refers only to those several states and does not include a foreign nation state within its meaning. The fact that Congress, in legislation applicable to both domestic states and foreign nations has consistently used the terminology "states and foreign nations" or "states and foreign states" also indicates that the word "states," when used alone, should be construed to mean only "states of the United States." See, e.g., 28 U.S.C.A. §§ 1332, 1251; 18 U.S.C.A. § 2314; 7 U.S.C.A. § 76. Indeed, this court has been unable to find any decision involving a federal statute where the word "states" has been interpreted to include a foreign nation. Nor has the defendant suggested any policy reason why the word "states" in Section 1873 should be so construed.

A final reason for limiting "states" in Section 1873 to domestic states derives from the statute itself. As originally enacted, Section 1873 and its earlier counterparts referred to "commerce and navigation between places in different states *and territories* * * *." At that time, a significant part of the United States and Canada consisted of territories. The phrase "and territories" was deleted, however, by the 80th Congress "as obsolete." Reviser's Note, 28 U.S.C.A. § 1873. That phrase would not be "obsolete" if Section 1873 referred to Canada as well as to our several states; for Canada, unlike the United States, still has its Northwest Territory. Thus, the use of the word "territories" in the original Act and its deletion when our nation no longer has territories suggest that the word "states" in Section 1873 was intended to refer only to the United States and does not include Canada within its meaning.

■ Hence, this court concludes that the word "states" in Section 1873 refers only to states of the United States. Defendant Bob-Lo's motion to strike plaintiffs' demand for a jury trial is, therefore, granted.

An appropriate order may be submitted.