**Complaint of the GREAT LAKES TOW-ING COMPANY, as Owner and Operator of the TUGS KENTUCKY and RHODE ISLAND, their Engines etc., for Exoneration from or Limitation of Liability.**

**No. C 72-1045.**

United States District Court,
N. D. Ohio, E. D.
Sept. 23, 1974.

Robert G. McCreary, Jr., Arter & Hadden, Cleveland, Ohio, for Great Lakes Towing Co.

Roman T. Keenen, Ray, Robinson, Keenen & Hanninen, Cleveland, Ohio, for Kinsman Marine Transit.

Harley J. McNeal, McNeal, Shick, Archibald & Carlson, Cleveland, Ohio, for Penn Central.

Thomas E. O'Connor, Jr., Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Union Dock Co.

Norton N. Newborn, Metzenbaum, Gaines & Stern, Cleveland, Ohio, for Penn Central Employees.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

### I. FACTUAL BACKGROUND

On July 24, 1972, the tugs Rhode Island and Kentucky, owned and operated by the Great Lakes Towing Company, were maneuvering the steamship George E. Seedhouse, owned and operated by

the Kinsman Marine Transit Company, out of the harbor in Ashtabula, Ohio. The Seedhouse had completed unloading at Union Dock, which is owned by Penn Central Transportation Company, the unloading having been accomplished by machines known as Huletts, which were attached to the Dock and were also owned by Penn Central. During its departure under tow, the bow of the Seedhouse contacted the Hulett and capsized it, causing damage to the dock and to the Seedhouse. Great Lakes brought this limitation of liability proceeding pursuant to 46 U.S.C. § 183–5 and § 188–9, and Rule F, Supplemental Rules for Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure. Claims have been filed by Kinsman Marine, Penn Central and a number of employees of Jones and Laughlin Steel Corporation. The latter claimants allege that their regular duties on the Union Dock were disrupted by plaintiff's negligence and that they are thus entitled to damages in the amount of income lost.

Plaintiff has moved for Judgment on the Pleadings against the Jones and Laughlin employees, and has also moved to strike Penn Central's jury demand. For reasons to be stated, both motions are granted.

## II. JONES AND LAUGHLIN EMPLOYEES

■ The claim of these individuals is, simply, that through the negligent operation of its tugs, plaintiff "inflicted damage to certain landbound equipment and facilities" which were necessary in the performance of claimants' work. As a result of these damages, work was halted for 18 days during which period claimants lost wages, which they are entitled to recover from plaintiff.

The Court finds the answer to these claims in the words of Mr. Justice Holmes, writing for the Supreme Court in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L. Ed. 290 (1927):

Of course the contract of the petitioner with the owners imposed no immediate obligation upon the petitioner to third persons as we already have said, and whether the petitioner performed it promptly or with negligent delay was the business of the owners and of nobody else. But as there was a tortious damage to a chattel it is sought to connect the claim of the respondents with that in some way. The damage was material to them only as it caused the delay in making the repairs, and that delay would be a wrong to no one except for the petitioner's contract with the owners. The injury to the propeller was no wrong to the respondents but only to those to whom it belonged. But suppose that the respondents' loss flowed directly from that source. Their loss arose only through their contract with the owners—and while intentionally to bring about a breach of contract may give rise to a cause of action, Angle v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.3d 55, no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. *Robins*, at 308–9, 48 S.Ct. at 135.

This principle of tort law is well-established in both civil and admiralty proceedings having been confirmed locally in Stevenson v. East Ohio Gas Co., 73 N.E.2d 200 (C.A. Cuy. Co. 1946). *See also* Casado v. Schooner Pilgrim, Inc., 171 F.Supp. 78 (D.Mass.1959); Petition of Clipper Fishing Corp., Inc., 194 F. Supp. 827 (D.Mass.1961); Guarrasi v. Panama Canal Co., 271 F.Supp. 678 (D. C.Z.1967); Henderson v. Arundel Corp., 262 F.Supp. 152 (D.Md.1966), aff'd 384 F.2d 998 (4 Cir. 1967).

In the instant case, the individual claimants did not own the Hulett nor any of the property damaged. They do

not claim the damages were caused purposefully. Therefore, they have failed to state a claim upon which relief can be afforded and judgment on the pleadings is appropriate against these Jones and Laughlin employees.

### III. MOTION TO STRIKE THE JURY DEMAND

Traditionally, all matters arising in admiralty are tried to the Court without a jury. 3 Benedict on Admiralty, 6 ed. § 381b.

The practice was recognized in the Federal Rules of Civil Procedure, wherein Rule 38(e) specifically states that "[t]hese rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim . . . ." *See also* Doughty v. Nebel Towing Co., 270 F.Supp. 957 (E.D.La. 1967).

The action in the instant case is a special statutory creation, first adopted by Congress in 1851 after the United States courts refused to develop a theory of limited liability for ship owners. *Benedict, supra,* § 478.

The limitation of liability proceeding was an unusual creation. Its language was murky and it took numerous Supreme Court decisions and rule enactments, combined with Congressional amendments, to bring it to its present state under the Code and Rule F, Supplemental Rules for Admiralty. The limitation action was similarly unusual in its substantive nature:

A petition for limitation of liability was described by Mr. Chief Justice Taft as being 'equitable in its nature, partaking in a way of the features of a bill to enjoin a multiplicity of suits, a bill in the nature of an interpleader, and a creditor's bill. It looks to the complete and just disposition of a many-cornered controversy, and is applicable to proceedings *in rem* against the ship as well as to proceedings *in personam* against the owner, the limitation extending to the owner's property as well as to his person.' It is a special statutory proceeding. It is *sui generis.* It is simply a limit on the remedy. It is nothing less than the administration of equity in admiralty. The proceeding initiated by the petitioner is not a controversy between the shipowner and some other party —in this case a cargo owner—but is the assertion of a statutory right. *Benedict, supra,* § 479.

*See also* Hartford Accident v. Southern Pacific, 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612 (1927).

There was no right to a jury trial provided in this section, The Eastland, 78 F.2d 984 (7th Cir. 1935); Terracciano v. McAlinden Const. Co., 485 F.2d 304 (2nd Cir. 1973), although a body of law developed to allow for jury trials in those cases in which there was but a single claimant, this exception being carved out under the "saving to suitor" exception in 28 U.S.C. § 1333. Gilmore and Black, The Law of Admiralty, § 10–16 through 10–19.

This exception was recognized in Famiano v. Enyeart, 398 F.2d 661 (7th Cir. 1968); cert. den., 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 564, wherein an injured water skier sued for damages and the defendant interposed limitation of liability as a defense. The Court of Appeals approved the jury trial of all the issues, save and excepting the limitation of liability defense. This decision embodies the desire of courts to avoid a situation in which an individual injured plaintiff is denied his right to a jury trial, while at the same saving to the ship owner the special admiralty proceeding.

In this instant situation, however, two or more claimants were allegedly injured during a single incident and under ordinary circumstances, plaintiff would be entitled to have his proceeding heard by a judge alone, and defendant's jury demand would be stricken.

However, defendant relies on the Great Lakes Statute, 28 U.S.C. § 1873, which provides, essentially, for a jury trial upon demand of either party in an

admiralty or maritime action arising upon the Great Lakes. The history of this section is ably presented by Chief Judge Freeman in Lees v. Bob-Lo Co., 318 F.Supp. 1107 (E.D.Mich.1970). In short, Congress originally enacted the Great Lakes Statutes in 1845 to expand admiralty jurisdiction to the Great Lakes, an earlier Supreme Court decision having limited admiralty jurisdiction to tidal waters. Authority for the statute was the power of Congress to regulate commerce and, since Congress felt it was transferring jurisdiction of cases from the common law to admiralty, the jury trial clause was included to avoid a conflict with the Seventh Amendment. When the Supreme Court later reversed its stand and held that the admiralty powers of Congress extended over the Lakes, the jury exception remained, an anomaly in the law of admiralty. *Gilmore, supra,* § 1–11.

The question before the Court thus becomes which of the above statutes is to be controlling when a ship owner properly invokes a limitation of liability proceeding against multiple claimants and the incident is at least arguably covered by the Great Lakes statute, and one of the claimants seeks a jury trial as provided in 28 U.S.C. § 1873.

█ The Court finds that a limitation of liability proceeding, which the action herein clearly is, is a unique statutory right and is so deeply founded in admiralty and equity that, when properly invoked by a plaintiff ship owner, it must be given full effect and the section controls over the Great Lakes Statute. *Cf. Doughty, supra.* The fact that the limitation action was created by Congress subsequent to enactment of the Great Lakes Statute is supportive of this position.

Defendant also objected to the consideration of the plaintiff's motion to strike on the basis that under Rule 12(f), Federal Rules of Civil Procedure, the motion was out of time. But that section refers only to matters which constitute insufficient defenses, or are re-

dundant immaterial, impertinent or scandalous. Since the jury demand does not fall in any of these categories, the motion to strike was not covered by the time limit provided therein.

For these reasons, the Court grants plaintiff's motion to strike the jury demand.

It is so ordered.