NEWBERY ALASKA, INC., Appellant,

v.

ALASKA CONSTRUCTORS, INC., Appellee.

No. 5556.

Supreme Court of Alaska.

May 7, 1982.

Stephen C. Hillard, Graham & James, Anchorage, for appellant.

Karl L. Walter, Jr., Anchorage, for appellee.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

Rogers Electric, Inc. ["Rogers"] operated a warehouse and an electrical subcontracting and supply business on the North Slope of Alaska. Newbery Alaska, Inc. ["Newbery"] is Rogers' successor in interest. Rogers leased its warehouse and office facilities at the Crazyhorse camp from Alaska Constructors, Inc. ["ACI"].

As a result of a fire on March 12, 1978, virtually all of Rogers' inventory at the camp was destroyed. At trial, ACI was found to be responsible for the fire, and as a result, Newbery was awarded damages totaling $55,500.40, plus interest, costs, and attorney's fees.

Newbery appeals,[1] asserting that the superior court erred by not including in the damages awarded the cost of transporting the destroyed property from Anchorage, the nearest market, to Crazyhorse. ACI argues that transportation costs are not mandated given that Rogers' operations were at a standstill at the time of the fire and were actually shut down thereafter and that some items had no associated transportation expense. In addition, ACI further contends that the amount of transportation costs was in dispute; that it is not clear that the superior court did not include any allowance for transportation costs; and that the overall damage award is not clearly erroneous in light of the evidence.

Upon review of the record it remains unclear whether or to what extent the damages award included transportation costs.[2] We, therefore, conclude that a remand is necessary. In order to guide the superior court in its reconsideration of the damages award we deem the following rules appropriate.

The principle of recovery in a negligence case is that the injured plaintiff is entitled to be restored to the position he would have occupied were it not for the defendant's negligence. *See, e.g., ERA Helicopters, Inc. v. Digicon Alaska, Inc.*, 518 P.2d 1057, 1059–60 (Alaska 1974); *State v. Stanley*, 506 P.2d 1284, 1293 (Alaska 1973);

1. ACI, the non-prevailing party at trial, has not appealed the superior court's judgment.

2. Both parties argue at length in their briefs whether the trial court included an allowance for transportation and, if so, how much.

The fact is, the record is simply ambiguous. Judge Buckalew stated that the goods had a unique value in place on the slope and that it would be "unjust and illogical" to confine relief to fair market value in Anchorage. At the same time, he repeatedly stated that he would not use the 50% markup figure suggested by Newbery and the actual sum awarded was apparently based on Newbery's estimates of the Anchorage market value of the goods without any allowance for transportation. The written findings clearly establish that the 50% markup was not used, but that does not mean that nothing at all was allowed for transportation costs. Taken as a whole, the superior court's remarks do not indicate whether or to what extent it included transportation costs as an element of the damages awarded.

*Beaulieu v. Elliott*, 434 P.2d 665, 670–71 (Alaska 1967). In the case of destroyed chattels, this means that the property owner is ordinarily entitled to the cost of transporting the goods to the place where the destruction occurred. *See generally* D. Dobbs, *Handbook on the Law of Remedies* 375 (1973); C. McCormick, *Handbook on the Law of Damages* 181–82 (1935).

The general rule does not apply, however, where the circumstances are such that the cost of transportation to the place of destruction is not a loss to the owner. Professor Dobbs illustrates the point nicely:

> If there is no market at the place where the chattel is destroyed, some other market, normally the "nearest," is said to furnish the guide, and when a market at some distant point is involved, cost of transporting the chattel to that point must be adjusted. Adjustments may either deduct the cost of transportation or add it, depending on circumstances. If an automobile is totally destroyed in a collision in a desert and the nearest reasonable market is Los Angeles, the owner intending to sell the automobile intended to transport it to Los Angeles and to pay the cost of so doing. This transportation cost was a cost he would pay even had there been no destruction of the car. Accordingly it is not a loss caused by the destruction and he cannot recover it. His measure of damages is thus the price of the Los Angeles market, less the transportation cost he would have expended in getting the car to that market. On the other hand, if the owner of the car is a prospector living in the desert where the car is destroyed and using it there, the principle of full reparation calls for an award that will allow him the monetary equivalent of a replacement. The monetary equivalent is the Los Angeles market *plus* the reasonable cost of transporting the car to the desert.

D. Dobbs, *supra*, at 375 (footnotes omitted) (emphasis in original).

After the fire, Rogers closed down its Crazyhorse operation as unprofitable. This means, in effect, that there was no longer a market for the property at the point of loss. ACI's position is that the loss of a Crazyhorse market through the closure of the Crazyhorse facility puts Rogers in the position of Professor Dobbs' hypothetical car owner whose car, which the owner intended to sell in Los Angeles, is destroyed in the desert. ACI argues that if Rogers uses the proceeds of its judgment to obtain similar property to that destroyed, the property will be obtained and used to be resold in Anchorage, making it a windfall to give Rogers any award for transportation to Crazyhorse.

If it were true that Rogers' decision to close down its Crazyhorse operation was not prompted by the fire, ACI's argument would make sense; the fire in that case would have saved the additional expense of transporting the materials back to Anchorage. But if the fire and the closure were substantially related, to deny the cost of transportation from Anchorage to Crazyhorse would impose a distinct loss on Rogers, since by the loss of the business in Crazyhorse Rogers has been deprived of a means of recouping the transportation costs already incurred.

On remand, the superior court should determine whether the fire was the proximate cause of Rogers' decision to close its Crazyhorse operation. If it was, the superior court should include in the award of the damages actual transportation costs to the extent that they have been proven.[3]

The award of damages is REVERSED, and the case REMANDED to the superior court for further findings and a recomputation of damages in accordance with this opinion.

---

**3.** We observe that the amount of actual expenses for transportation was in dispute. Nothing in this opinion should be construed as indicating whether Rogers met its burden of establishing the transportation element of damages with the requisite degree of certainty. This is a matter for the superior court to consider in the first instance. Upon remand the superior court should, in its findings and conclusions, explicitly address the issue of damages for transportation costs.