James L. JENSEN and Everett J. Lindholm, Appellants and Cross–Appellees,

v.

Martin GORESEN, owner of F/V Poseidon, Appellee and Cross–Appellant.

Nos. S–5095, S–5115.

Supreme Court of Alaska.

Oct. 7, 1994.

Patrick J. McKay, Law Offices of Patrick J. McKay, Anchorage, for appellants/cross-appellees.

James W. Hill, Jr., Wade & De Young, Anchorage, for appellee/cross-appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal arises out of a collision between the F/V Rhema and the F/V Poseidon in Cedar Bay, Prince William Sound. Goresen, the skipper of the F/V Poseidon, was injured shortly after the collision. The F/V Rhema, skippered by Lindholm and owned by Jensen, captured a school of sac-roe herring the F/V Poseidon was attempting to enclose in its seine. After trial by jury, Lindholm and Jensen were found liable for Goresen's injuries and the value of the herring catch which the F/V Poseidon lost.

Jensen and Lindholm raise four issues in this appeal: (1) whether the superior court should have allowed the introduction into evidence of the criminal convictions of Lindholm and a potential witness for conspiracy to violate the Lacey Act; (2) whether the superior court correctly instructed the jury as to the elements of conversion; (3) whether the superior court erred in establishing a constructive trust for the crew members out of the damages awarded to Goresen for the lost herring catch; and (4) whether the superior court erred in denying a motion for a new trial based on a conversation which took place between Jensen and Goresen after the jury commenced its deliberations.

In his cross-appeal, Goresen argues that the jury's determination that he was thirty-five percent comparatively negligent is flawed because the superior court erred by failing to instruct the jury (1) that the F/V Poseidon was a "vessel engaged in fishing" and the F/V Rhema was not, and (2) that the F/V Poseidon had the exclusive right to fish at the site in question.

I. *FACTS AND PROCEEDINGS*

On April 21, 1988, Goresen was skippering the F/V Poseidon and had let out 880 feet of seine. Goresen was "holding open" this seine for fifteen minutes waiting for word from his spotter pilot, Anthony Dobert, to advise him when to close the seine. There is a conflict in the testimony as to whether the F/V Poseidon was moving at the time the collision with the F/V Rhema occurred, as well as a dispute as to whether the seine was still moving off the F/V Poseidon at the time of the collision.

While the F/V Poseidon was holding open its seine, the F/V Rhema approached and lowered its skiff in the area of the F/V Poseidon's skiff.[1] The F/V Rhema then let its seine out inside the incomplete circle of

---

1. This skiff was holding one end of the F/V Posei-   don's seine.

the F/V Poseidon's seine. While in the process of laying out its seine the F/V Rhema struck the bow of the F/V Poseidon, causing Goresen to sustain various personal injuries. After the collision the F/V Poseidon hauled its seine back on board without catching the school of herring that Goresen was attempting to encircle. The F/V Rhema caught the school of herring, which weighed 58.9 tons and had a value of $816 per ton.

Goresen then filed suit against Jensen and Lindholm seeking punitive damages and damages for conversion of the herring, personal injuries sustained as a result of the collision, and damages to the F/V Poseidon. At trial the jury awarded $17,392 on the conversion claim. As to the personal injury claim, the jury concluded that Goresen had suffered damages in the amount of $60,000 and that he was thirty-five percent responsible for his injuries. Therefore Goresen's award for personal injuries was reduced to $39,000.

Goresen subsequently submitted a proposed judgment awarding him $17,392 for the lost herring, with a provision for a constructive trust for the crew's portion. The superior court entered an order providing for a constructive trust. Thereafter the superior court denied Jensen and Lindholm's motion for a new trial. This appeal followed.

## II. DISCUSSION

### A. The Superior Court Did Not Err When It Admitted Lindholm's Conviction for Impeachment Purposes [2]

■ The superior court allowed Goresen to introduce evidence that Lindholm had been convicted of conspiracy to violate the Lacey Act Amendments of 1981, 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(A), by knowingly transporting in interstate commerce fish caught in violation of Alaska's fishing laws.[3] While acknowledging the risk of unfair prejudice which introduction of the evidence might produce, the superior court determined that risk was outweighed because the evidence of these convictions was "highly probative of [Lindholm's] credibility." The court offered to inform the jury only of the fact that Lindholm had "been convicted of a crime involving dishonesty," in order to minimize the prejudice resulting from the similarity between the convictions and the conduct which formed the basis of Jensen's liability in the instant case.[4] Jensen and Lindholm, however, requested that the specifics of Lindholm's conviction be admitted. The superior court deferred to Jensen and Lindholm and instructed the jury that its use of this evidence was limited to evaluating Lindholm's credibility as a witness.[5]

In making its determination to admit the evidence the superior court stated:

> The court [in City of Fairbanks v. Johnson, 723 P.2d 79 (Alaska 1986)] ... held that a misdemeanor conviction for concealment of merchandise was a crime of dishonesty....
>
> The basic issue is really whether this Lacey Act violation involved ... dishonesty. And my conclusion is that it did, in fact, involve, dishonest [sic] within the Alaska courts' interpretation of that.

2. The superior court's determination that a conviction pertains to a crime involving dishonesty, and is therefore admissible for impeachment purposes pursuant to Alaska Evidence Rule 609, is reviewed for abuse of discretion. *City of Fairbanks v. Johnson*, 723 P.2d 79, 83 (Alaska 1986).

3. Lindholm also appeals from the superior court's ruling that the conviction of a potential defense witness, Robert Day, for the same crime was admissible for impeachment purposes. Day, however, did not testify at trial.

4. Lindholm pled guilty to conspiracy, based upon an alleged elaborate scheme involving exportation of herring caught in Prince William Sound out-of-season, in violation of 5 AAC § 27.310(a) and AS 16.05.060.

5. The superior court instructed the jury as follows:

> You are instructed that Mr. Lindholm has been convicted of the crime of conspiracy to violate the Lacey Act statute, which prohibits the catch and transportation in interstate and foreign commerce of illegal fish, that is fish caught in an area not open to fishing and/or at a time the season was not open. You may consider this evidence only in determining Mr. Lindholm's credibility. You may not consider this evidence as having any bearing on the likelihood that Mr. Lindholm committed any wrongful act alleged by plaintiff in this case. It is up to you, the jurors, to determine what weight, if any, you choose to give this evidence.

Alaska Evidence Rule 609 permits the introduction of prior convictions for purposes of impeaching a witness "if the crime involved dishonesty or false statement." Jensen and Lindholm argue that conspiracy to poach fish is not a crime involving dishonesty. In *City of Fairbanks v. Johnson,* 723 P.2d 79 (Alaska 1986), we construed Rule 609 to encompass all crimes that "disclose[ ] the kind of dishonesty which would bear upon a person's tendency to testify truthfully." *Id.* at 82. For example, we have held that concealment of merchandise,[6] larceny and embezzlement,[7] and robbery,[8] are crimes of dishonesty within the meaning of Evidence Rule 609.

Given the range of theft crimes covered by Rule 609, we hold that conspiracy to poach fish is a crime involving dishonesty. We therefore conclude that the superior court did not abuse its discretion in admitting Lindholm's Lacey Act conviction for impeachment purposes.

B. *The Superior Court Properly Instructed the Jury on the Elements of Conversion* [9]

■ Regarding Jensen and Lindholm's conversion of herring the superior court gave the following instruction:

### INSTRUCTION NO. 14

For plaintiff to win on his first claim for the value of the fish allegedly taken you must decide that it is more likely than not true that the following things happened:

1. that the plaintiff had a possessory interest in the fish in his seine set;

2. that the defendant, Everett Lindholm, interfered with the plaintiff's right to possess the fish;

3. that the defendant intended to interfere with plaintiff's possession; and

4. that the defendant's act was the legal cause of the plaintiff's loss of the fish.

If you decide it is more likely than not true that these four things happened, you have decided the defendant wrongfully took the fish to which plaintiff was entitled. You must then decide the amount the defendant(s) should pay the plaintiff for his loss. Otherwise, you must return a verdict for the defendants on this question.

Jensen and Lindholm's primary complaint regarding this instruction is that the superior court failed to give the following proposed instruction:

A person is deemed to have possessed the fish in question when he has ceased fishing and is in control of the fish. Under the circumstances in this case, Plaintiff is deemed to have ceased fishing when both ends of the seine are attached to his fishing vessel.

Jensen and Lindholm argue that this court should require the jury to find that Goresen had control of the fish before concluding that a conversion occurred. Jensen and Lindholm note that Lindholm's alleged interference with the F/V Poseidon took place before the F/V Poseidon had completely closed its seine. Jensen and Lindholm thus argue that, at that point, the herring had not been caught and that it was premature to find that the F/V Poseidon was "entitled" to the herring in question.

Goresen counters that a rule creating a possessory interest only when each fish is inescapably in one's control runs counter to custom, precedent and reason. Jensen and Lindholm do not dispute Goresen's assertion, which is supported by the record, that seine fishermen in Alaska have a custom of never entering another vessel's circled seine. This, according to Goresen, creates "an established limit to the competition," permitting orderly activity where there would otherwise be

**6.** *City of Fairbanks v. Johnson,* 723 P.2d 79, 82 (Alaska 1986).

**7.** *Lowell v. State,* 574 P.2d 1281, 1284 (Alaska 1978).

**8.** *Alexander v. State,* 611 P.2d 469, 476 (Alaska 1980).

**9.** Jury instructions are reviewed under the independent judgment standard. *Beck v. State, Dep't of Transp. and Pub. Facilities,* 837 P.2d 105, 114 (Alaska 1992).

bedlam. In regard to this Alaska custom the superior court instructed the jury as follows:

> In deciding whether Mr. Goresen had a possessory interest in any fish taken by defendants, you may consider, among other things, any evidence presented to you regarding customs among fishermen.

Given the text of Jury Instruction No. 14, together with the instruction regarding the custom of seiners in Alaska, we hold that the superior court did not err in rejecting Jensen and Lindholm's proposed instruction.

In *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223 (Alaska 1983), we held that "[i]n order to maintain a cause of action for conversion the plaintiff must establish that he had a certain possessory interest in the chattel at the time of the wrongful act." *Id.* at 1228. "Certain" in this sentence means "particular" rather than "inevitable." The particular possessory interest which the jury found to have existed here is one defined by custom. The custom, in turn, arose out of the need for order on the fishing grounds. The trial court did not err in refusing to give the instruction submitted by Jensen and Lindholm.[10]

### C. *The Superior Court Did Not Err in Establishing a Constructive Trust for the Crew of the F/V POSEIDON*

■ Jury Instruction No. 14 permitted the jury to award Goresen the full value of any herring it found Jensen had converted. After the jury returned its verdict in favor of Goresen, the superior court established a constructive trust for the shares of the crew of the F/V Poseidon and its spotter pilot. Jensen and Lindholm claim that the superior court erred in establishing the constructive trust. In our view this issue involves two questions: (1) whether the crew and spotter pilot can recover their shares of the value of the converted herring, and (2) whether they can do so without being parties in this litigation.

Courts have allowed fishing vessel crew members to recover based on their contractual rights. *See Miller Indus. v. Caterpillar Tractor Co.*, 733 F.2d 813, 820 (11th Cir.1984) (holding that crew members could recover through the shipowner-plaintiff, acting as trustee); *Carbone v. Ursich*, 209 F.2d 178 (9th Cir.1953) (awarding crew shares for damages resulting from a net negligently fouled by another ship); *Reefer Queen Co. v. Marine Construction & Design Co.*, 73 Wash.2d 774, 440 P.2d 448 (1968) (creating a constructive trust because the crew was "closely allied with the vessel" and therefore entitled to share in damages for lost catch due to defective winch). In *State v. Stanley*, 506 P.2d 1284, 1293 n. 21 (Alaska 1973), we endorsed the possibility of crew recovery in dictum.

We are not persuaded by the authorities relied upon by Jensen.[11] *Guarrasi* is the only case cited by Jensen and Lindholm that is on point. In that case, the court rejected *Carbone*'s rationale, holding that the crew could not recover for lost shares or wages resulting from damage to the ship's cargo of fish. *Guarrasi*, 271 F.Supp. at 679–80. The

---

**10.** Our holding has made it unnecessary to address Goresen's argument that his right to the herring is not the only relevant property right with which Jensen interfered.

**11.** Jensen relies on *Casado v. Schooner Pilgrim, Inc.*, 171 F.Supp. 78, 80 (D.Mass.1959), *Guarrasi v. Panama Canal Co.*, 271 F.Supp. 678, 680 (D.C.Z.1967), and *Henderson v. Arundel Corp.*, 262 F.Supp. 152 (D.Md.1966), *aff'd*, 384 F.2d 998 (4th Cir.1967).

In *Casado*, the court did not allow a crew to recover when the defendant's alleged negligence required the vessel to be dry-docked for five weeks. *Casado*, 171 F.Supp. at 79. The court held that the crew's claim could only be based upon the crew's lay share employment agreement. *Id.* The court characterized the crew's interest in catches lost because the vessel never embarked upon the voyage as a contractual relationship "of the weakest sort." *Id.* Based upon its fear of imposing "open-ended" obligations on the tortfeasor, the court did not allow the crew to recover. *Id.* at 80. In the case at bar, the crew was already working on the F/V Poseidon, which was engaged in fishing, and thus the contractual relationship was stronger. Moreover, the obligation that the superior court imposed upon Jensen and Lindholm vis-a-vis the crew was not "open-ended."

*Henderson* refused to create a rule allowing crew recovery for unintentional, negligent interference, but endorsed recovery under a statute that prohibited intentional interference. *Henderson*, 262 F.Supp. at 159–60. In this case, the jury found for Goresen on the conversion claim, and so it must have concluded that the interference was intentional.

court based its opinion on the tortfeasor's lack of knowledge of the crew's share agreement, and its reluctance to make such tortfeasors "villains." *Id.* at 680.

We find the cases cited by Goresen more persuasive. In *Miller* the negligence of an engine manufacturer caused several weeks of delays. *Miller,* 733 F.2d at 816. The Eleventh Circuit allowed the crew to recover, holding that the crew had established a relationship with the vessel and that, in light of the finite period of incapacity, damages were not unduly speculative. *Id.* at 818–20. In the case at bar the damages are even less speculative, given that there is only a single catch that was interfered with and that the jury was able to compute the value of the catch. And, like *Miller,* the crew had already spent time on the ship, and therefore the relationship was not a purely prospective one at the time of the incident.

Additionally, unlike the court in *Guarrasi,* we do not believe that permitting this constructive trust will create a class of tortfeasor "villains." This is not a case of expanding the tortfeasor's liability or affording tort victims a double recovery.

For example, Jensen and Lindholm wrongly assume that the alternative to a constructive trust would be a reduced award. Goresen had a possessory interest in the fish, and the superior court established the constructive trust only to prevent his unjust enrichment. Goresen has contractual obligations to his crew and spotter pilot that require him to pay them based upon the catch. Assuming *arguendo* that the constructive trust was invalid, Goresen would still be entitled to the full award. The crew and spotter pilot could then sue Goresen to recover their share of

the catch. Establishing the constructive trust, therefore, has no effect upon Jensen and Lindholm's liability.[12]

Jensen and Lindholm's final argument concerning this issue is that it was error to allow the crew and spotter to recover without subjecting them to the jurisdiction of the superior court. We hold that the superior court's use of a constructive trust for the benefit of the crew and spotter pilot was proper. Both *Miller* and *Reefer Queen* endorsed the use of constructive trusts in favor of non-party crew members. *See also Howard v. Dalio,* 249 Mont. 316, 815 P.2d 1150, 1152–53 (1991) (upholding lower court's establishment of a constructive trust in favor of one not party to the action where that person's interests were adequately protected). Again, we note that Jensen and Lindholm are not prejudiced by creation of the constructive trust, since the extent of their liability remains the same.

D. *The Superior Court Did Not Err in Denying Jensen's Motion for a New Trial*

After the jury commenced its deliberations, an exchange took place between Goresen and Jensen. What was said is in dispute. According to Jensen, Goresen said:

> I apologize to you for using your boat for spite to get back at Joe[13] for something that happened in Togiak years ago. You shouldn't even have been involved in this. Actually, the incident involved Joe's brother. I'm sorry this is going to cost a lot of money and you are going to lose this.

Goresen disputes Jensen's version, claiming that he merely said, "I am sorry that you were involved in this law suit because Joe Lindholm used your boat out of spite to get even with me for something that happened in

---

**12.** Though they cite to cases that involved crews in other circumstances, Lindholm and Jensen fail to cite to a single case in which a court used a shipowner's contractual obligations to his or her crew to reduce an award for conversion. They cite *Newbery Alaska, Inc. v. Alaska Constructors, Inc.,* 644 P.2d 224 (Alaska 1982). In that case, Alaska Constructors, Inc. leased a warehouse from Newbery, and caused a fire that destroyed virtually all of Newbery's inventory. *Id.* at 225. The superior court awarded the full value of the inventory, but Newbery asserted that the superior court erred by not awarding Newbery the cost of transporting replacement goods to the warehouse. *Id.* We remanded for consideration of

several issues, but held that an award of transportation costs might be appropriate. *Id.* at 226.

Thus, *Newbery* does not stand for the proposition that awards should generally be reduced to reflect contractual obligations, or that such a principle would apply in the case of conversion. The only manner in which *Newbery* potentially supports the position of Jensen and Lindholm is *Newbery*'s holding that in negligence cases, plaintiffs should be restored to the positions they would have been in but for the negligence. *Id.* at 225. In this case, Lindholm acted intentionally.

**13.** "Joe" refers to Lindholm.

Togiak." Jensen and Lindholm thereafter moved for a new trial, citing this conversation as "newly discovered evidence." The superior court denied the motion.[14]

Beyond observing that Goresen denied knowing Lindholm in a deposition, and the general claim that "the motivation of the parties was a major issue before the jury," Jensen and Lindholm's argument in support of his new trial point is devoid of citations to the record or explanation of the implications of the conversation. We think Goresen's version appears more likely for a number of reasons, including the undisputed fact that Goresen did not know Lindholm was on the F/V Rhema at the time of the collision.

Even if Jensen's version is true, Jensen has not met his heavy burden of demonstrating that this new evidence would "probably change the result on a new trial." *Montgomery Ward*, 394 P.2d at 776. He makes a conclusory argument to this effect, but an "explanation for [Goresen's] anger" would be unlikely to alter a factfinder's evaluation of what happened and who was at fault in this context. On the basis of our review of the record and the parties' arguments, we conclude that these are not "exceptional circumstances" which require us to overturn the superior court's decision not to grant a new trial.

E. *The Superior Court Properly Instructed the Jury Concerning the Respective Duties of the Two Vessels*

Goresen claims on cross-appeal that the jury should not have been permitted to find

him comparatively negligent, and thereby reduce his damages. His opening cross-appeal brief presents the issue as follows:

> 1. Whether a fishing vessel which (1) enjoys full maneuverability because its net or other gear is not extended and under tension and (2) is traveling to a fishing site or looking for a promising site to set its gear out is a "burdened vessel" under Navigation Rule 18 with the obligation thereunder to keep out of the way of a fishing vessel whose maneuverability is encumbered by an extended seine or other fishing gear under tension?

Goresen's arguments focus on Jury Instruction No. 23.[15] Goresen claims that "Jury Instruction No. 23 is in error because it requires the Jury to determine upon the evidence whether they think the F/V Poseidon was so encumbered that it could not maneuver sufficiently to get out of the Rhema's way." What Goresen seems to be claiming is that the superior court should not have given the jury the definition of a "vessel engaged in fishing" and should not have allowed it to determine whether one or both of the boats were engaged in fishing. In essence, Goresen argues that the superior court should have instructed the jury that, as a matter of law, the F/V Poseidon was engaged in fishing and the F/V Rhema was not.

First, we conclude that Jury Instruction No. 23 correctly sets out the law, essentially restating Navigation Rule 18 of the Interna-

---

14. The decision to grant or deny a motion for a new trial is within the discretion of the trial court. *Montgomery Ward v. Thomas*, 394 P.2d 774, 774–75 (Alaska 1964). We will not disturb the trial court's ruling "except in exceptional circumstances and to prevent a miscarriage of justice." *Id.*

15. Jury Instruction No. 23 reads in full as follows:

INSTRUCTION NO. 23

Coast Guard Regulation 18 provides in relevant part that

(a) a power-driven vessel under way shall keep out of the way of a vessel restricted in her ability to maneuver or a vessel engaged in fishing; and

(b) a vessel engaged in fishing when underway shall, so far as possible, keep out of the

way of a vessel restricted in her ability to maneuver.

1. The term "vessel engaged in fishing" means any vessel fishing with nets, lines, trolls or other fishing apparatus which restrict maneuverability.

2. The word "underway" means that a vessel is not at anchor, or made fast to the shore, or aground.

3. The term "vessel restricted in her ability to maneuver" means a vessel which, from the nature of her work, is restricted in her ability to maneuver as required by these regulations and is therefore, unable to keep out of the way of another vessel.

4. "Keep out of the way" means that a boat is required to, so far as possible, take early and substantial action to keep well clear of the other boat.

tional Regulations for Preventing Collisions at Sea. 42 Fed.Reg. 17,112, 17,114 (1977). Whether one or both of the vessels was a "vessel engaged in fishing" at the time of the incident is important in determining the respective duties of the ships under federal law. With a few exceptions, power-driven vessels shall "keep out of the way" of vessels engaged in fishing. *Id.* "Keep out of the way" means "so far as possible, take early and substantial action to keep well clear." *Id.* "Vessel engaged in fishing" refers to "any vessel fishing with nets, lines, trawls or other fishing apparatus which restrict manoeuvrability, but does not include a vessel fishing with trolling lines or other fishing apparatus which do not restrict manoeuvrability." *Id.* at 17,113.

■ Goresen argues that the F/V Poseidon was engaged in fishing and the F/V Rhema was not, and therefore the F/V Rhema owed a duty to "keep out of the way" of the F/V Poseidon. Jensen responds that "there was testimony from which the jury could find that both vessels had seine coming off the back of their sterns at the time of the collision."

Based upon our review of the evidence we think it clear that at the time of the collision the F/V Poseidon was engaged in fishing. It had set its net, and was waiting for an instruction to close from its spotter pilot. Though at the time of the collision there may have been a small amount of seine going off the F/V Poseidon, this does not negate the fact that the net was set and the vessel was engaged in fishing. On the other hand there is evidence in the record that the F/V Rhema was laying seine at the time of the collision.[16]

On this record we conclude that there was evidence from which the jury could find that both vessels were engaged in fishing at the time of the collision.[17] Under all of the jury

instructions as to the respective duties of vessels to avoid collisions and based on the record, the jury could properly assign comparative fault to Goresen.[18]

### F. The Superior Court Did Not Err in Refusing to Instruct the Jury That the First Fisher on a Site is Entitled to Exclusive Possession of the Site

■ Goresen argues that the superior court should have instructed the jury that the first fisher on a site is entitled to "exclusive possession" of the site. He cites a line of cases, beginning with *Snug Harbor Packing Co. v. Schmidt,* 394 P.2d 397 (Alaska 1964), that establish a "first in time, first in right" rule for set net sites. This issue is important, Goresen argues, because the value of the F/V Rhema's catch was worth more than twice the amount the jury awarded Goresen on his conversion claim.

Yet Goresen never explains the connection between the instruction he requested and the outcome of the case. Goresen asks this Court to hold that "a seine fisherman has possession of the seas within his encircled seine and he has a possessory interest in the fish he has a reasonable expectation to catch...." According to Goresen, however, it is undisputed that the fish whose value he wishes to recover were not within his encircled seine. The school, according to Goresen, was "partly inside the Poseidon's seine circle and partly outside." The jury heard evidence regarding what the F/V Poseidon would have caught, and made a reasonable determination.

We further note that even under Goresen's proposed rule, the measure of damages would be the same as in this case—the catch the rightholder was deprived of. The jury instructions on this issue were proper. The jury was instructed that, in order to award

---

**16.** Goresen himself also testified that the F/V Rhema was engaged in fishing at the time the collision occurred.

**17.** We specifically decline to adopt Goresen's suggestion that "vessels engaged in fishing" should be limited as a matter of law to "vessels with nets or lines or trawls out and *fully under tension from the resistance of the ocean* against the movement of full[y] extended gear." Whether the F/V Rhema's maneuverability while letting

out its net was restricted, and it was therefore a vessel engaged in fishing, was properly a question of fact for the jury.

**18.** Most notably, Lindholm testified that the F/V Poseidon "encroached" upon the F/V Rhema by changing its direction unexpectedly, turning to the right approximately sixty degrees by the time of the collision.

damages for an item of loss, it had to find that "it [was] more likely to be true than not that [Goresen] had such a loss or is reasonably probable to have such a loss," and that Jensen and Lindholm were the legal cause of the loss. The jury was also told that the loss claimed by Goresen with regard to the fish was simply "the net value of the fish" wrongfully taken.

We hold that the jury was properly instructed on this issue and that there is support in the record for its verdict.[19]

## III. CONCLUSION

We hold that the superior court did not err in permitting introduction of evidence regarding Lindholm and the potential defense witness' Lacey Act convictions for purposes of impeachment, that the superior court correctly instructed the jury regarding conversion and the respective duties of the two vessels, that the superior court did not err in establishing a constructive trust for Goresen's crew and spotter pilot, that the superior court did not err in declining to grant Jensen and Lindholm's motion for a new trial, and that the superior court did not err in refusing to instruct the jury that the first fisher onsite is entitled to exclusive possession of that site. We therefore AFFIRM the judgment entered by the superior court.

---

19. For the above reasons, we need not address the propriety of Goresen's proposed "first in time, first in right" instruction.